**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| SOUTHEASTERN FISHERIES ASSOCIATION, INC., et al., | ) ) ) | |
| *Plaintiffs* | ) ) ) | |
| v. | ) ) | Case No. 26-cv-1533 |
| HOWARD LUTNICK, in his official capacity as Secretary of Commerce, et al., | ) ) ) ) | |
| *Defendants* | ) ) ) ) | |

**PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION OR STAY**

Pursuant to Federal Rule of Civil Procedure 65 and Local Civil Rule 65.1(c), Plaintiffs in the above-captioned case respectfully move this Court for a preliminary injunction prohibiting Defendants from giving effect to the exempted fishing permits at issue in this case. In the alternative, Plaintiffs move the Court to stay the effectiveness of the exempted fishing permits pursuant to 5 U.S.C. § 705.[1]

The attached memorandum of points and authorities explains why Plaintiffs are entitled to preliminary relief, under the relevant framework from *Winter v. Natural Resources Defense*

---

[1] Plaintiffs understand the legal standard to be identical relative to these two forms of preliminary relief. *See, e.g., Save Long Beach Isl. v. Dep't of Commerce*, No. 1:25-cv-02214-CJN, Slip Op. at 5–6 (D.D.C. Oct. 24, 2025) (Nichols, J.).

*Council*, 555 U.S. 7 (2008). Specifically, Plaintiffs have a high likelihood of prevailing on the merits; they are likely to suffer irreparable harm in the absence of preliminary relief; and the balance of equities and public interest favor an injunction.

**Plaintiffs Request an Expedited Hearing Pursuant to Local Rule 65.1(d)**

As the moving parties, Plaintiffs respectfully request expedition in this matter and a hearing as soon as possible. LCvR 65.1(d). Time is of the essence. Between May 1 and May 5 of this year, Defendants issued so-called "exempted fishing permits," which purport to authorize massively expanded 2026 recreational red snapper fishing seasons for the four South Atlantic states—the biggest of which is set to begin less than two weeks from now.

Florida has the largest recreational fleet by far, as well as the largest distribution of South Atlantic red snapper. Catch off Florida therefore will account for the lion's share of all red snapper caught under these permits. Florida's permit allows it to open the recreational fishing season for red snapper on May 22, 2026, for a total of 39 days of directed fishing. *See* National Marine Fisheries Service, Permit No. 26-SERO-01: Exempted Fishing Permit to Test a State-Based Data Collection and Management System for the Recreational Harvest of Red Snapper off Florida for 2026 (May 1, 2026) (Exhibit 1). The State of Florida has made its intention clear that it will in fact open the recreational fishing season for South Atlantic red snapper on May 22, 2026. *See, e.g.*, Ron DeSantis (@RonDeSantis) on X (May 1, 2026), https://x.com/RonDeSantis/status/2050247366922424646.

The permits issued to the other three states—Georgia, South Carolina, and North Carolina—allow those states to open their recreational fishing seasons on July 1, 2026, for a total of 62 days of directed fishing. *E.g.*, National Marine Fisheries Service, Permit No. 26-SERO-02: Exempted Fishing Permit to Test a State-Based Data Collection and Management System for the

Recreational Harvest of Red Snapper off Georgia for 2026 (May 5, 2026) (Exhibit 2). Those three states similarly announced their intentions to in fact open recreational fishing for South Atlantic red snapper on July 1, 2026. *See, e.g.*, Georgia Dep't of Natural Res., Press Release: NOAA Approves Red Snapper EFP, Two-Month Season Set for 2026 (May 1, 2026), *available at* https://georgiawildlife.com/News/260501RedSnapper; Skylar Laird, South Carolina Daily Gazette, SC Anglers to Get 2-Month Red Snapper Season Instead of 2 Days (May 8, 2026), *available at* https://scdailygazette.com/2026/05/08/sc-anglers-to-get-2-month-red-snapper-season-instead-of-2-days; North Carolina Dep't Envtl. Quality, Press Release: Red Snapper Exempted Fishing Permit Season 2026 (May 4, 2026), *available at* https://www.deq.nc.gov/news/press-releases/2026/05/04/north-carolina-recreational-red-snapper-season-will-open-62-days.

As explained in Plaintiffs' memorandum of points and authorities, these exempted fishing permits expressly allow overfishing of South Atlantic red snapper, breach the stock's annual catch limit, and create a de facto reallocation. They would not be legal under ordinary Magnuson-Stevens Act management, and the agency lacks the authority to take any action via an exempted fishing permit that it would not be able to take in the course of ordinary management.

Within a matter of days after Florida opens its recreational red snapper season on May 22, 2026, landings will exceed the annual catch limit and fishing mortality will exceed the overfishing threshold. South Atlantic red snapper has had a recreational open season of around two days in recent years, *see, e.g.*, 90 Fed. Reg. 24,527, 24,530 (June 11, 2025), so after Florida's season has been open for two days, it starts to be a reasonable assumption that recreational landings have exceeded the annual catch limit and fishing mortality will exceed the overfishing threshold.

This Court must act quickly to avoid the negative consequences that go with overfishing red snapper, which are set forth in detail in Plaintiffs' memorandum of points and authorities. Plaintiffs respectfully urge the Court to allow Defendants a single round of responsive briefing, hold a subsequent motion hearing, and to rule on the instant motion—if at all possible—prior to the Florida season opening on May 22, 2026.

Plaintiffs request a motion hearing because it would represent their sole opportunity to respond to Defendants' arguments. There is not enough time for reply briefing, and an in-person hearing would provide an efficient means for all parties to bring their rejoinders and follow-up points to the table.

**Plaintiffs Rely on Appropriate Factual Materials**

Plaintiffs rely on a few different types of factual materials in support of this motion. First are documents that are within the scope of the administrative record in this case. While a formal record has not been prepared by the agency, if and when such a record is prepared it will include at very least the following: (1) the four state applications for exempted fishing permits, as posted by Defendant National Marine Fisheries Service ("NMFS") for public comment; (2) the Federal Register notice published by NMFS, requesting public comment on the applications, *see* 91 Fed. Reg. 6827 (Feb. 13, 2026); (3) all public comments received by Defendants via Regulations.gov and otherwise; (4) the categorical exclusion memorandum prepared by Defendants pursuant to the National Environmental Policy Act, 42 U.S.C. § 4321 *et seq.*; (5) any internal decision memorandum or other documents Defendants may have produced in the course of approving the permits; and (6) the challenged permits themselves, which were issued by NMFS to each of the four states and countersigned by state officials. To the extent Plaintiffs rely

on these materials, a copy is provided via an exhibit attached to the declaration of undersigned counsel, with an explanation of the document's origin.

The second type of factual material relied upon by Plaintiffs is Federal Register documents. As a general matter, Federal Register documents are judicially noticeable under 44 U.S.C. § 1507 and Federal Rule of Evidence 201(b)(2). Federal Register documents cited by Plaintiffs generally are not attached as exhibits to counsel's declaration. The only exception is the agency's notice and request for comment on the permits challenged in this case, which as noted above would be considered a direct part of the record.

The third type of factual material relied upon by Plaintiffs is publicly available documents or media. Plaintiffs cite to a handful of such sources for background purposes, to aid the Court generally in understanding the issues in this case. Plaintiffs also cite to a few such sources for motion purposes—for example, in the section above addressing the need for expedition under Local Civil Rule 65.1(d). Plaintiffs may also cite a few such sources in the course of establishing standing or irreparable harm. The Court can take judicial notice of these materials at its discretion. *See* Fed. R. Evid. 201(b) (providing that judicial notice may be taken of a fact that is "not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned").

The fourth and final type of factual material relied upon by Plaintiffs is declarations from the Plaintiffs themselves. These are relied upon primarily for the purpose of establishing irreparable harm and standing.

To reiterate: for their merits arguments, Plaintiffs solely rely on factual materials that are within the scope of the record and Federal Register documents. Plaintiffs have no intention of

relying on extra-record or otherwise improper materials for their merits arguments, nor do they believe such materials are necessary to resolve this case.

**Plaintiffs Will Provide Actual Notice of This Motion to Defendants**

Undersigned counsel certifies that shortly after filing this motion and associated papers in the Court's CM-ECF system, counsel will transmit via email copies of this motion to the following:

- Individual trial attorneys within the U.S. Department of Justice's Wildlife and Marine Resources Section (Mark.Brown@usdoj.gov and Kamela.Caschette@usdoj.gov), which is the section of DOJ that handles cases of this type on behalf of Defendants Howard Lutnick and National Marine Fisheries Service;

- The front-door email address for the U.S. Department of Justice's Environment and Natural Resources Division (webcontentmgr.enrd@usdoj.gov), which is the division of DOJ containing the Wildlife and Marine Resources Section;

- Individual attorneys within the Office of General Counsel for the National Oceanic and Atmospheric Administration (Mara.Levy@noaa.gov, Michael.McLemore@noaa.gov, and Anne.Kersting@noaa.gov), which is the office that provides internal counsel for Defendant National Marine Fisheries Service;

- The front-door email address for the Office of General Counsel for the Department of Commerce (GeneralCounsel@doc.gov), which is the office that provides internal counsel for Defendant Howard Lutnick; and

- The receiving email address for service of process for the United States Attorney for the District of D.C. (USADC.ServiceCivil@usdoj.gov), as well as the Civil Chief within that office (peter.pfaffenroth@usdoj.gov).

While service of process has not yet been completed in this matter, it is Plaintiffs' position that these email transmissions provide actual notice to Defendants of the instant motion under Federal Rule of Civil Procedure 65(a)(1).

**Plaintiffs Request Consolidation Pursuant to Rule 65(a)(2)**

In the interests of efficiency, Plaintiffs request the Court "advance the trial on the merits and consolidate it with the hearing" on this motion for preliminary relief. Fed. R. Civ. P. 65(a)(2); *see also Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) (noting this procedure can be used when "an expedited decision on the merits [is] appropriate"); *NOW v. Operation Rescue*, 747 F. Supp. 760 (D.D.C. 1990) (Oberdorfer, J.) ("[A] Rule 65(a)(2) accelerated trial is a routine procedure designed to preserve judicial resources and save the parties from wasteful duplication of effort.").

This is a lawsuit for judicial review of a single discrete agency action. As described above, only a modest set of factual materials are necessary to evaluate the action, and those materials are readily available. There is no need to spend time developing the facts; nothing is waiting to be "discovered" that currently is lacking. *See, e.g.*, *Am. Hosp. Ass'n v. Azar*, 348 F. Supp. 3d 62, 85 (D.D.C. 2018) (Contreras, J.) (applying Rule 65(a)(2) consolidation where "there is no reason to believe that a more developed record in the future could lead to any other outcome").

Practically speaking, no party will be prejudiced by dispensing with the formal collation of an administrative record. Everyone is familiar with the relevant documents here. Plaintiffs watched this action unfold at the agency level, and they have what they need to proceed. Defendants, as always, have full access to the factual materials. Under Rule 65(a)(2), "[a] decision on the merits is appropriate where, as here, 'the record is sufficient for a determination

on the merits under the summary judgment standard.'" *Salesian Soc'y v. Mayorkas*, No. 18-cv-0477-EGS, Slip Op. at 5–6 n.4 (D.D.C. Sept. 22, 2021) (Sullivan, J.) (quoting *March for Life v. Burwell*, 128 F. Supp. 3d 116, 124 (D.D.C. 2015)). Such is the case here. *See also Am. Hosp. Ass'n*, 348 F. Supp. 3d at 84 ("Plaintiffs' Complaint actually presents no disputed factual allegations, but rather only arguments about the legal conclusion to be drawn about the agency action." (cleaned up)).

This case presents a single question of law: does NMFS have authority to exempt itself from the substantive requirements of the Magnuson-Stevens Act? That question will be briefed fully in the course of resolving this motion, and Plaintiffs "can discern no benefit from an additional round of legal arguments." *Trump v. Comm. on Oversight & Reform*, No. 19-cv-01136-APM, Dkt. 25, at 1 (May 9, 2019) (Mehta, J.) (order on consolidation under Rule 65(a)(2)). *See also Trump v. Comm. on Oversight & Reform*, 380 F. Supp. 3d 76, 88–90 (D.D.C. 2019) (Mehta, J.) (merits opinion) (discussing Rule 65(a)(2) consolidation and noting that objecting party had failed to "identify [any] new argument that they would make if given the chance to do so").

Finally, because the 2026 recreational fishing season for South Atlantic red snapper would be finished by the time this Court reaches summary judgment in the ordinary course of litigation, Defendants would in all likelihood raise mootness arguments. While Plaintiffs would oppose such arguments, this nonetheless would imply that Plaintiffs' preliminary injunction motion represents their main chance at relief—in which case, "resolving [the] preliminary injunction [] disposes of the entire complaint." *Morris v. District of Columbia*, 38 F. Supp. 3d 57, 63 (D.D.C. 2014) (Contreras, J.); *see also id.* (cataloging similar cases).

For these reasons, Plaintiffs request the Court advance the merits stage of this case, and consolidate it with resolution of this motion under Rule 65(a)(2).

**Plaintiffs Request A Nominal Bond or No Bond in This Case**

Because a preliminary injunction or stay presents no monetary risks to Defendants in this case, Plaintiffs request that the associated bond be set at either zero or $1.00, according to the Court's discretion. *See* Fed. R. Civ. P. 65(c) (requiring a security in "an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained"); *see also DSE, Inc. v. United States*, 169 F.3d 21, 33 (D.C. Cir. 1999) (noting the language of the rule "has been read to vest broad discretion in the district court to determine the appropriate amount of an injunction bond"); *P.J.E.S. ex rel. Escobar Francisco v. Wolf*, 502 F. Supp. 3d 492, 520 (D.D.C. 2020) (Sullivan, J.) (similar).

The interests of justice favor a nominal or no bond in this case. Plaintiffs' counsel is a solo practitioner who takes on public interest fishery management cases, and has no ability to post a substantial bond. Individual and fishing company Plaintiffs similarly have no ability to post a substantial bond, as they are all are barely viable economically. And Plaintiff Southeastern Fisheries Association has a very limited income—derived entirely from membership fees—with virtually no net assets.

Defendants will incur no financial costs if they are enjoined and forced to follow the law. They have acted without authority under the Magnuson-Stevens Act, and their action will inflict harm on Plaintiffs and other commercial fishermen, as well as on our nation's marine natural resources (as explained in the attached memorandum of points and authorities).

In this context, it would not further justice to place a heavy financial burden on Plaintiffs for trying to hold Defendants to account. *See, e.g.*, *N. Am. Bldg. Trades Unions v. Dept. of Def.*,

9

No. 1:25-cv-1070-RC, at 32-33 (D.D.C. May 16, 2025) (Contreras, J.) ("Where the risk of financial harm is speculative at best and where a bond would have a chilling effect on access to justice, the balance of equities firmly supports waiving the bond."); *see also Nat'l Council of Nonprofits v. Office of Mgmt. & Budget*, 775 F. Supp. 3d 100, 130 (D.D.C. 2025) (Alikhan, J.) (similar); *Am. Oversight v. Hegseth*, No. 1:25-cv-883-JEB, at 26-27 (D.D.C. Jun 20, 2025) (Boasberg, J.) (noting recent ambiguity from D.C. Circuit about permissibility of a zero dollar bond, and as such requiring a nominal $1.00 bond); *J.G.G. v. Sanchez*, No. 1:25-cv-766-JEB, at 67-69 (D.D.C. Jun 04, 2025) (Boasberg, J.) (same).

*          *          *

As described above, and for the reasons set forth in the accompanying memorandum of points and authorities, Plaintiffs respectfully move this Court to preliminarily enjoin or stay the effectiveness of the permits at issue—or, upon Rule 65(a)(2) consolidation, simply vacate them and provide further relief as requested in Plaintiffs' complaint.

Dated:  May 10, 2026                    Respectfully submitted,

/s/ Seth Atkinson
Seth L. Atkinson (Bar ID CA00190)
Quillback Consulting
540 Meder Street
Santa Cruz, CA 95060
(203) 331-2792
seth@quillbackconsulting.com

*Attorney for Plaintiffs*