**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SOUTHEASTERN FISHERIES ASSOCIATION, INC., et al., <br><br> *Plaintiffs* <br><br> v. <br><br> HOWARD LUTNICK, in his official capacity as Secretary of Commerce, et al., <br><br> *Defendants* | Case No. 26-cv-1533 |

**DECLARATION OF ANTONIO GIAMBANCO IN SUPPORT OF
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION OR STAY**

I, Antonio Giambanco, pursuant to the provisions of 28 U.S.C. § 1746, declare as follows:

1.      This declaration is based on my personal knowledge, information, and belief. I am over 18 years of age, and am competent to testify to all facts contained in this declaration.

2.      I am a commercial fisherman, and I live in Titusville, Florida.

3.      I own a fishing vessel, the *F/V Main Vein*, from which I conduct my commercial fishing activity.

4.      I am a member and co-owner of Main Vain Charters LLC, a limited liability company registered with the State of Florida. My brother also is a member and co-owner of this company. Together we are the sole and full owners of the company.

1

5.      My brother and I also jointly own a corporation which holds a South Atlantic limited access vessel permit for Snapper-Grouper species. This permit is leased annually to our LLC for use on the *F/V Main Vein*, allowing us to conduct commercial Snapper-Grouper fishing on that vessel.

6.      Fishing is my primary source of income and the basis of my livelihood. I catch fish throughout the South Atlantic region, but mainly off Florida's East Coast in the winter and off the Carolinas in the summer. I sell my catch to various fish buyers in these areas. I also sometimes buy fish from other fishermen and sell them to distributors and others.

7.      In my experience, red snapper are easy to catch in the South Atlantic region.

8.      Fish buyers pay an amount for red snapper that varies depending on a number of factors, but often is seven or more dollars per pound.

9.      Under the terms of my limited access vessel permit, I am restricted to an extremely low trip limit of red snapper—currently 75 pounds. And I am only allowed to retain that amount during the designated commercial red snapper season, which in recent years has been just a few months long.

10.      When the commercial red snapper season is open, I often stop and catch the limit of red snapper at the beginning of a fishing trip. The revenue from these fish can help pay for fuel and other expenses.

11.      I generally spend my summers away from home because the available opportunities for Snapper-Grouper fishing off Florida's East Coast in the late summer are patchy, due to high levels of red snapper bycatch, and I need to be able to reliably generate income. I can do this more easily from the Carolinas, but this comes at the cost of being away from my wife and child for extended periods of days.

2

12.     For these reasons, the current commercial trip limit and season length represent a direct constraint on my potential to earn revenue and my personal life.

13.     If red snapper trip limits were to increase, I would make use of the increased landing limit by catching and selling more red snapper. This activity would produce more income for me, and would improve the economic sustainability of my fishing business.

14.     As a commercial fisherman I routinely operate on thin margins, given the high cost of fuel, bait, tackle, food, and safety equipment—all of which have increased in price significantly in recent years. Increased red snapper landings would allow me to breathe a bit more, and to invest in things like vessel maintenance and longer-term capital costs.

15.     Increased red snapper trip limits and season length also would affect my personal life positively. If I were able to earn more from catching and selling red snapper—which is abundant near my home in Florida—I would not have to travel to the Carolinas to fish during the summers, and I would be able to spend more time with my loved ones.

16.     Because my livelihood depends on fishing, I follow the South Atlantic Fishery Management Council and periodically participate in the management process by providing public testimony.

17.     My understanding is that the current low trip limits and short season for red snapper are caused by the stock's rebuilding plan, in combination with ongoing high levels of dead discards in the recreational sector.  Because dead discards are taken off the top before red snapper are allocated out to the sectors, we in the commercial sector end up bearing some of the cost of the recreational sector's dead discard problem.

18.     For this reason we have pushed the Council and NMFS in recent years to bring accountability to recreational fishing, and specifically to separate the sectors at the "top line"

3

level, meaning each sector gets its own amount of total catch. That way, the commercial sector could benefit from its sustainable fishing, and the recreational sector would have to figure itself out—or not, but either way, it would no longer affect the commercial sector.

19.     The agency action challenged in this lawsuit is issuing exempted fishing permits for South Atlantic red snapper to the recreational sector. The permits will allow state-based open seasons that are around 20 times (for Florida) and 30 times (for the northern states) as long as the recreational season has been in recent years. There is no accountability being provided for this fishing binge, and there is no way to pay back the harm to the stock.

20.     This action will harm me. It will inflict overfishing on the red snapper stock, knocking down the population and setting back the rebuilding plan. Every additional year of rebuilding is another year during which commercial fishermen like me are held to trip limits that make it economically difficult or impossible to target red snapper at any meaningful scale.

21.     This harm is particularly acute for me given where I live and fish. Red snapper are relatively abundant in the waters off Florida's East Coast, and I can find them easily. The commercial 75-pound trip limit is not a reflection of the fish's availability; it is an artifact of a management system that has been distorted by unaccountable recreational discarding. If the challenged action proceeds, the stock will be pushed further back, the rebuilding plan will take longer, and the relief I am waiting for—higher trip limits that would allow me to actually capitalize on the abundance of red snapper near my home—will be further delayed.

22.     As discussed above, red snapper regulations also affect my ability to spend time at home with my family. By delaying the possibility for increased trip limits, the challenged action extends the number of years during which I have to choose between my livelihood and my family.

4

23.     There is no procedure under the Magnuson-Stevens Act or elsewhere by which I could be compensated for the delay in rebuilding caused by the challenged action. The economic and personal harm I will suffer is unrecoverable through litigation.

24.     In my years as a commercial fisherman in the South Atlantic, I have come to know the ocean pretty well. From my home in central Florida to the waters off the Carolinas, I know the currents, seasonal patterns, and many of the bottom structures. I also know red snapper well—how to find and catch them, how they respond to weather and currents and fishing pressure. When I catch a red snapper, I can tell you a lot of things about it just from looking at it and handling it. I did not get this knowledge from books; I accumulated it from spending years on the water.

25.     Fishing is not just a day job. For better or for worse, it is a way of life or a kind of existence. You end up being far more connected to the natural world than other people. In particular, you develop ties to the ocean and the fish populations that are hard to describe. This is because you end up living many of your days on the water. It also is because your fate and your future is tied to the fish and the ocean around you. Given this connection, when I see fish stocks being harmed—and particularly when they are harmed arbitrarily and unnecessarily—it has a real impact on me.

26.     Red snapper rebuilding has been a painstaking process, and commercial fishermen like me have worked under tight restrictions through the years. To see the resource deliberately damaged—after all that work to rebuild—is a blow that I feel personally, beyond its effect on my income.

27.     I also want to mention a further type of harm caused by this action, which is its broader effect on industry. The agency is allowing a recreational red snapper fishing binge,

which is going to damage the population and set back rebuilding. It is a classic shortsighted "fish first, ask questions later" action. And it is a result of direct political pressure; it did not originate in the usual deliberative fishery management process. Taken together, it inflicts a real demoralization cost on industry.

28.     Commercial fishermen have accepted and worked within the management system under the Magnuson-Stevens Act. We have accepted low trip limits, unfavorable allocation ratios, and returned again and again to participate in the Council process. We have done all this because we understood the overall goal of sustainability, and the importance of things like rebuilding fish stocks.

29.     The exempted fishing permits show us that this sacrifice was one-sided: that the recreational sector can, when it chooses and when it has the political connections to do so, simply step outside the legal framework while the commercial sector remains bound by it. This corrodes the fairness and integrity of the entire management system, and it is a real blow to the morale and cohesion of the commercial fishing community.

I declare under penalty of perjury under the laws of the United States that the foregoing is true to the best of my knowledge and belief.

Executed on May 9, 2026 in Titusville, Florida.

_____
ANTONIO GIAMBANCO

6