**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| SOUTHEASTERN FISHERIES ASSOCIATION, INC., et al., | ) ) ) ) | |
| *Plaintiffs* | ) ) | |
| v. | ) ) | Case No. 26-cv-1533 |
| HOWARD LUTNICK, in his official capacity as Secretary of Commerce, et al., | ) ) ) | |
| *Defendants* | ) ) ) ) | |

**DECLARATION OF CAPTAIN BOB ZALES, II IN SUPPORT OF
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION OR STAY**

I, Capt. Bob Zales, II, pursuant to the provisions of 28 U.S.C. § 1746, declare as follows:

1.      This declaration is based on my personal knowledge, information, and belief. I am over 18 years of age, and am competent to testify to all facts contained in this declaration.

2.      I am the Executive Director of Southeastern Fisheries Association, Inc. ("SFA"), a position I have held for over two years.

3.      As Executive Director of SFA, I work on behalf of commercial fishermen and the fishing industry in the southeastern United States. Through my role at SFA and previous experience, I have developed extensive knowledge of federal fishery management law and policy, the South Atlantic and Gulf of Mexico fisheries, the commercial fishing communities that depend on those fisheries, and the regulatory and advocacy landscape affecting them.

1

4.      SFA is a nonprofit trade association founded in 1952, and currently based in Panama City, Florida. SFA is one of the oldest and largest commercial fishing industry associations in the United States. Its primary mission is to represent, promote, and protect the interests of commercial fishermen, fishing vessel owners and operators, seafood processors, dealers, and related businesses that depend upon sustainable, well-managed marine fisheries.

5.      SFA's membership is drawn from commercial fishing interests operating across the South Atlantic and Gulf of Mexico regions. Members include individual commercial fishermen and fishing vessel owners, commercial fishing companies, seafood dealers and processors, fishing gear suppliers, and others whose livelihoods are tied to commercial fisheries. Our membership collectively represents an appreciable portion of the commercial fishing industry operating in the broader Southeast region.

6.      Our organization is governed by a Board of Directors, which is comprised of prominent individuals from the commercial fishing industry—including fishermen, buyers, processers, and others across the seafood supply chain. The Board provides strategic direction and oversight, approves organizational priorities, and authorizes legal and advocacy actions taken on behalf of membership. Day-to-day operations are managed by the Executive Director. We also maintain standing committees focused on specific fisheries or regulatory matters.

7.      Advocacy for sustainable, science-based fishery management is central to SFA's mission. We engage regularly in the federal and state fishery management processes on behalf of our members, including by participating in meetings of the South Atlantic Fishery Management Council and the Gulf Fishery Management Council. We submit written comments on proposed fishery management measures, and communicate with officials at the National Marine Fisheries

Service and the Department of Commerce regarding fisheries matters. We similarly engage and advocate at the state level, as needed for our organizational priorities.

8. SFA supports the Magnuson-Stevens Act, which is the primary statute governing fishery management in U.S. federal waters. We believe that the transparent, science-based, and stakeholder-driven processes established by the Magnuson-Stevens Act—including the regional fishery management councils—is essential to maintaining healthy fish stocks, protecting the long-term economic viability of commercial fishing, and ensuring fair and equitable allocation of fishery resources.

9. SFA has been an active participant at the South Atlantic Council across a range of species and management issues, including South Atlantic red snapper. As needed, SFA provides testimony, submits comments, and engages council members and NMFS staff—as well as other stakeholders—during council proceedings. SFA has a direct and continuing organizational interest in the outcome of federal management decisions affecting South Atlantic red snapper.

10. In addition to participating at the South Atlantic Council working with the agency, SFA engages in legislative advocacy at both federal and state levels. We coordinate with peer organizations, and, when necessary, participate in administrative and judicial proceedings to protect the interests of commercial fishermen and to ensure that fishery management decisions are made lawfully.

11. I personally have reviewed SFA's membership records. Based on that review, I can confirm that each of the following individuals is a current member of Southeastern Fisheries Association:

      a. Jeffrey Oden

      b. Jack Cox, Jr

c. Antonio Giambanco

12.     Each of these individuals participates in commercial fishing or fishing vessel operations in the South Atlantic, and each has a direct and concrete interest in the sustainable management of South Atlantic fisheries, including South Atlantic red snapper. Their interests as commercial fishermen, and SFA's organizational interests on their behalf, are directly implicated by the Exempted Fishing Permits challenged in this litigation.

13.     SFA, through its members, will be directly and adversely affected by the red snapper Exempted Fishing Permits challenged in this case. Those permits authorize a dramatic and unprecedented expansion of recreational fishing effort targeting South Atlantic red snapper. SFA and its members are harmed by this action in multiple respects.

14.     South Atlantic red snapper has a long and difficult management history. The population was depleted through the second half of the 20th Century, and significant rebuilding effort has been required. Commercial fishermen have carried a substantial share of the sacrifice associated with rebuilding, including significant reductions to commercial trip limits, which govern how much South Atlantic red snapper they can catch and land.

15.     SFA's members have abided by restrictive commercial trip limits for years, accepting economic hardship in reliance on the expectation that the Magnuson-Stevens Act's science-based management framework would govern decisions around stock recovery and the eventual allocation of sustainable harvest.

16.     The Exempted Fishing Permits at issue in this case authorize a massive surge of recreational fishing effort targeting South Atlantic red snapper. The scale of recreational harvest the agency is permitting in 2026 far exceeds any level supported by the best available scientific information.

17.     This explosion of recreational fishing effort threatens to derail the region's hard-won progress in stock rebuilding, undermine the objectives of the existing South Atlantic red snapper management framework, and damage the resource upon which SFA's members depend.

18.     Commercial fishermen, fish buyers, processors, and sellers will be harmed if the red snapper resource is depleted by unsustainable recreational harvest. Depletion of the resource will either reduce the commercial trip limits, if managers attempt to pay back the overage, or extend the duration of the rebuilding plan, if not. Either of these outcomes will impact the revenues of our members' commercial fishing businesses, reducing their economic viability. The harm to SFA's members is concrete, likely, and not speculative.

19.     Beyond the direct harm to the resource, Southeastern and its members are harmed by the manner in which these Exempted Fishing Permits were issued. The Magnuson-Stevens Act establishes a deliberate, transparent, and participatory process for federal fishery management. Under that process, management measures are developed by the regional fishery management councils with public notice and comment, reviewed against the best available science, and evaluated against the Act's national standards. This robust process provides one of the main forums through which SFA advocates, to protect and advance the interests of commercial fishermen.

20.     The Exempted Fishing Permits challenged in this case were issued outside the Magnuson-Stevens Act's normal management framework. By routing this significant policy decision—a massive increase in recreational harvest—through outside the standard council amendment and rulemaking process, the National Marine Fisheries Service has effectively bypassed the stakeholder deliberation that the Magnuson-Stevens Act requires.

21.    SFA has an organizational interest, independent of the interests of its individual members, in ensuring that federal fisheries management in the South Atlantic is conducted in accordance with the Magnuson-Stevens Act and is consistent with sustainable, science-based management principles. The issuance of the red snapper Exempted Fishing Permits frustrates and undermines that organizational mission.

22.    For all of the foregoing reasons, SFA and its members, including Jack Cox, Jr., Jeffrey Oden, and Antonio Giambanco, will suffer concrete harm from the Exempted Fishing Permits challenged in this action.

I declare under penalty of perjury under the laws of the United States that the foregoing is true to the best of my knowledge and belief.

Executed on May 8, 2026 in Panama City, Florida.


　　　　　　　　　　/s/ Bob Zales II
　　　　　　　　　　CAPT. BOB ZALES, II