March 10, 2026

Ms. Mary Vara
Southeast Regional Office
National Marine Fisheries Service
263 13th Avenue South
St. Petersburg, FL 33701

Re:    State applications for recreational exempted fishing permits for South Atlantic red
       snapper (NOAA-NMFS-2026-0496)

Dear Ms. Vara:

Please accept this letter on behalf Slash Creek Waterworks, Inc. and others, regarding the red
snapper Exempted Fishing Permit (EFP) applications from the States of Florida, Georgia, South
Carolina, and North Carolina, as published for public comment at 91 Fed. Reg. 6827 (Feb. 13,
2026).  We have two main factual observations and one legal point, regarding these EFP
applications.

First, the proposed EFPs will lead to recreational red snapper landings that far exceed the
recreational sector's portion of the annual catch limit (ACL), and this in turn will cause
exceedance of the stock-wide ACL.

The current ACL for South Atlantic red snapper is 34,000 landed fish.[1]  This is allocated to the
sectors via sub-ACLs, with 22,797 landed fish as the Recreational ACL, and 102,951 landed
pounds as the Commercial ACL.[2]  The commercial sector generally has caught its full sub-ACL
in recent years, and can be expected to do so going forward.[3]  Thus the relevant question is
whether the recreational sector, under the EFPs, will exceed 22,797 landed fish per year.

---

[1] See Amendment 59 Final Rule, 90 Fed. Reg. 24,527 (June 11, 2025).  NMFS also asserts the stock has a "total
ACL" of 509,000 fish, which includes both landings and dead discards.  See id. at 24,529.  This "total ACL" is not
an annual catch limit within the meaning of 16 U.S.C. § 1853(a)(15), however, because there are no measures to
ensure accountability.

[2] 50 C.F.R. § 622.193(y).

[3] See, e.g., South Atlantic Fishery Management Council, South Atlantic Commercial Landings for 2024 and 2025
(Dec. 2025 SAFMC briefing book).

1

Recreational landing rates during recent red snapper open seasons have been quite high—with landings of around 12,500 fish per day in Florida alone last year.[4]  The states hope that recreational effort will "decompress" if a longer open season is allowed, such that per-day landing rates go down.[5]  Unfortunately, the math does not add up.  Even with optimistic assumptions around effort decompression, recreational landings under a 39-day open season still will substantially exceed the Recreational ACL.[6]

Thus there is rational way for NMFS to conclude it can grant the EFPs while keeping South Atlantic red snapper landings below the ACL.

Second, the proposed EFPs will increase the fishing mortality rate for South Atlantic red snapper, causing overfishing on the stock.

The Maximum Fishing Mortality Threshold (MFMT) for South Atlantic red snapper is established by the current proxy for the level of fishing mortality at maximum sustainable yield ($F_{MSY}$ proxy).[7]  That proxy was recently set in Secretarial Amendment 59 as the fishing mortality rate experienced by the stock during the 2021–2023 period ($F_{2021–2023}$),[8] which was quantified numerically in the SEDAR 73 Update assessment as a fishing mortality rate of 0.34.[9]

Relative to the 2021–2023 period, commercial landings and dead discards are not expected to change going forward.[10]  Similarly, out-of-season recreational dead discards (and landings, to the extent they exist) will not change under the EFPs.[11]  The only changes will be a substantial increase in landings (as just noted above), as well as a possible change in dead discards.

---

[4] See Ellie Corbett & Chloe Ramsay, Florida Fish and Wildlife Conservation Commission, Recreational Effort, Catch, and Biological Sampling in Florida During the 2025 South Atlantic Red Snapper Season, at 3 (Dec. 3, 2025).

[5] See Florida Proposal at 8; Georgia Proposal at 7; South Carolina Proposal at 4–5, 12–13; North Carolina Proposal at 11.  The states cite two particular studies for support.  See Tara S. Topping et al., A Comparison of Private Recreational Fishing Harvest and Effort for Gulf of Mexico Red Snapper During Derby and Extended Federal Seasons and Implications for Future Management, 39 N. Am. J. Fisheries Mgmt. 1311 (2019); Sean P. Powers & Kevin Anson, Compression and Relaxation of Fishing Effort in Response to Changes in the Length of Fishing Season for Red Snapper (Lutjanus campechanus) in the Northern Gulf of Mexico, 117 Fishery Bull. 1 (2018).

[6] Even reducing landings to 35% of last year's rate, the new landings rate still would be close to 4,400 fish per day.  Applying this rate to the proposed 39-day Florida season (and ignoring the other states) results in around 170,000 landed fish.  This essentially represents the most optimistic scenario, and it still vastly outstrips the Recreational ACL of 22,797 landed fish.

[7] See Amendment 59 Final Rule, 90 Fed. Reg. at 24,529.

[8] Id.

[9] Southeast Fisheries Science Center, National Marine Fisheries Service, Stock Assessment of Red Snapper off the Southeastern United States: Update of SEDAR 73 Assessment, at 17 (Dec. 2024).

[10] The EFP proposals essentially concede as much.  See Florida Proposal at 9; Georgia Proposal at 9; South Carolina Proposal at 5; North Carolina Proposal at 3.

[11] The EFP proposals acknowledge no changes are proposed for out-of-season discarding.  See Florida Proposal at 10; Georgia Proposal at 6–7, 8–9, 12; South Carolina Proposal at 9, 12–13; North Carolina Proposal at 12.

We are not aware of any currently-available quantitative estimate of the absolute change in dead discards that would result from granting the EFPs.[12]  That said:

- If dead discards increase under the EFPs, overfishing will occur, because there also will be an increase in landings.  In this situation, both components of fishing mortality would be moving in the same direction (i.e., increasing).

- If dead discards decrease under the EFPs, the available evidence indicates that such a decrease will not be large enough to offset the increased landings.[13]  In this situation, the two components of fishing mortality would be moving in opposite directions, but the increase in landings would substantially outweigh the decrease in dead discards—meaning once again, overfishing occurs.

As such, the only rational conclusion here is that granting the EFPs will result in overfishing.  Specifically, fishing mortality for South Atlantic red snapper will increase relative to the status quo (i.e., $F_{2021-2023}$), and because the status quo has been established as the stock's MFMT, any increase means that overfishing will occur.

This brings us to the legal point:  the Secretary of Commerce does not have authority under the Magnuson-Stevens Act to waive ACLs for South Atlantic red snapper, nor to affirmatively allow overfishing.

In Section 318(d) of the Act, Congress directed the Secretary to "promulgate regulations that create an expedited, uniform, and regionally-based process to promote issuance, where practicable, of experimental fishing permits."[14]  This instruction was made in the context of a "Cooperative Research and Management Program," which prioritizes collaborative projects to improve fishing gear, protect habitat, and reduce bycatch, among other things.[15]  No part of this section allows the Secretary to simply abandon ordinary management for South Atlantic red snapper and adopt measures that facially fail to comply with the Act.

---

[12] Comparison between in-season and out-of-season discarding rates requires comparing across two different survey methodologies—MRIP and state enhanced sampling.

[13] Information in this regard is available from Florida's pilot EFP, as reported to the South Atlantic Council at the December 2025 meeting.  See Florida Fish and Wildlife Conservation Commission, FWC Atlantic Red Snapper EFP Project: Year 1, at 14 (Dec. 2025) (showing decrease in discards that is smaller than corresponding increase in landings, when anglers switch from closed season to open season).

[14] 16 U.S.C. § 1867(d).

[15] Id. § 1867; see also id. § 1867(c) (listing priorities).

We strongly recommend the Secretary deny the EFP proposals.

Thank you for your consideration.  Relevant factual materials are provided under separate cover.

Yours truly,

Seth Atkinson
seth@quillbackconsulting.com


Addendum A – Stock Assessments and Related Documents
Addendum B – Materials from Current Stock Assessment Process
Addendum C – Florida Mini-Season Survey Reports
Addendum D – Management Actions and Season-Setting
Addendum E – Post-SEDAR 73 Examination of Recreational Dead Discards
Addendum F – Recent EFP Materials
Addendum G – Relevant Scientific Papers

4