IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

MICHAEL N. MILBY. CLERK

United States District
Southern District of T
ENTERED
MAY 0 2 1995
Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| LINDEL FAIR, ET AL. | § | |
| | § | |
| VS. | § | C.A. NO. C-93-022 |
| | § | |
| UNITED STATES OF AMERICA | § | |

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiffs are individuals and an association of individuals who are reef fish permit holders and who make a living, in whole or in part, by fishing for red snapper off the coast of Texas. On December 30, 1992, the National Marine Fisheries Service ("NMFS") published an emergency rule limiting the ability of plaintiffs to harvest red snapper to the amount of 200 pounds per trip, while permitting individuals who qualify for an endorsement to harvest up to 2000 pounds per trip.[1] Through Amendments 6 and 9 to the Reef Fish Fishery Management Plan, NMFS extended the red snapper endorsement system through December 31, 1995.

Plaintiffs contend that the red snapper endorsement system constitutes an arbitrary and inequitable economic allocation of fishing resources in violation of the Magnuson Fishery Conservation and Management Act. 16 U.S.C. § 1851 et seq. Plaintiffs seek declaratory relief[2] and ask the Court to remand Amendment 9 to NMFS

---

[1] To be eligible for an endorsement, a vessel must document total annual red snapper landings of at least 5,000 pounds in two out of three qualifying years.

[2] This is an action for judicial review and non-monetary relief under the Administrative Procedure Act, 5 U.S.C. § 702 et. seq. Plaintiffs originally sought both declaratory and injunctive relief, but no longer seek an injunction. (See, D.E. # 54.)

REC'D MAY 5 1995

for further consideration. Defendant counters that the endorsement system is a management effort designed to prevent the derby-like fishing season that occurred in 1992. In 1992, the red snapper quota was filled in just 53 days, resulting in a number of social, economic, and fishery conservation consequences, including lower red snapper prices, unemployment, and a quota overrun of 600,000 pounds. Both parties move for summary judgment.

## Standard of review

Under the Magnuson Act, regulations implementing Fishing Management Plans ("FMPs"") are subject to the same standard of review governing challenges to agency action under the Administrative Procedures Act, 5 U.S.C. § 706(2) (A)-(D). In general, the scope of judicial review is limited to the administrative record before it and relied on by the Secretary. __Florida Power & Light Co. v. Lorion__, 470 U.S. 729, 743-44, 105 S. Ct. 1598, 1607 (1985). The Court may not declare Magnuson Act regulations invalid unless it finds the regulations to be arbitrary and capricious or otherwise not in accordance with the law. __Alaska Factory Trawler Ass'n v. Baldridge__, 831 F.2d 1456, 1460 (9th Cir. 1987). The Court's role is to ensure that the Secretary's decision is rational, but may not substitute its own judgment for that of the Secretary. __See__, __Sea Watch International v. Mosbacher__, 762 F. Supp. 370, 378 (D.D.C. 1991).

-2-

## Discussion

Fishing Management Plans ("FMPs") must comply with the seven national standards enumerated by the Magnuson Act. See 16 U.S.C. § 1851(a)(1)-(7). Plaintiffs complain that the endorsement system violates national standards 4 and 5,[3] and that the 5,000 pounds landings qualifier is not supported by the administrative record.

### National Standard 4

Plaintiffs allege that the endorsement system discriminates between Gulf state fishermen, pointing out that, although most red snapper are harvested from offshore Texas, as of August 1994, only 35 endorsements had been issued to Texas fisherman while Florida fishermen had been issued 50.

There is no evidence that the red snapper endorsement system discriminates between state residents. Residency is irrelevant for the purposes of qualifying for the endorsement. Qualification requirements are based entirely on the vessel owners' or operators'

---

[3]National standards 4 and 5 state:

4.    Conservation and management measures shall not discriminate between residents of different states. If it becomes necessary to allocate or assign fishing privileges among various United States fishermen, such allocation shall be (a) fair and equitable to all such fishermen; (b) reasonably calculated to promote conservation; and, (c) carried out in such a manner that no particular individual, corporation, or other entity acquires an excessive share of such privileges.

5.    Conservation and management measures shall, where practicable, promote efficiency in the utilization of fishery resources; except that no such measure shall have economic allocation as its sole purpose.

-3-

historical landings over the 1990-1992 seasons.[4]   Based on the historical landing criteria, Florida fishermen have been issued approximately 60 endorsements compared to approximately 40 endorsements issued to Texas fishermen; however, the criteria themselves are neutral.[5]   Under the Magnuson Act regulations, conservation and management measures that have different effects on persons in various geographical locations are permissible.   50 C.F.R. § 602.14(b).  <u>See also</u>, 50 C.F.R. § 602.14(b)(2) (rule that disadvantages fishermen from one state is permissible under National Standard 4 as long as it has no discriminatory intent).

Plaintiffs also argue that the endorsement system is not fair and equitable to all fishermen.  Plaintiff points out that, out of the 2,214 reef fish permit holders, only 135 received endorsements. Plaintiffs numbers are misleading, however, because only 251 of the 2,214 reef fish permit holders actually applied for a red snapper endorsement, and 131 (over 52%) were finally approved for an endorsement.[6]

In defining "fairness and equity," the regulations recognize that "[i]nherent in an allocation is the advantaging of one group to the detriment of another." 50 C.F.R. § 602.14(c)(3)(i)(A).  The

---

[4]E.R.A.R., Tab III-92.

[5]Florida fishermen participate in a trip ticket program.  This additional record keeping may have made it easier for Florida fishermen to prove that they had met the 5,000 pound qualifier to receive an endorsement.

[6]A.9.A.R., Tab 12 at 20.

regulations also state that "[a]n allocation of fishing privileges may impose hardship on one group if it is outweighed by the total benefits received by another group or groups." 50 C.F.R. § 602.14(c)(3)(i)(B). The endorsement system provides a justification for favoring one group over another: it favors those fishermen who have demonstrated "a historical dependence on the fishery, while still allowing a fair level of take by those who had traditionally landed smaller quantities of red snapper."[7]

The endorsement system requires that vessels document total annual red snapper landings of 5,000 pounds in two out of the three qualifying years in order to be eligible for an endorsement. An endorsement allows a fisherman to catch up to 2,000 lbs/trip. Vessels not qualifying for an endorsement are permitted to catch up to 200 lbs/trip. The Gulf Council arrived at these figures by reviewing the average trip landings and percentage of red snapper per trip at various total annual landings. Below the 5,000 lb annual landing point, the average trip landing was less than 180 pounds.[8] The Council concluded that the 200 pound limit per trip would not have a major negative impact on the non-qualifying vessels because these vessels historically caught less than 200 lbs/trip. The data also showed that, for those vessels whose 1991 landings were less than 5,000 pounds, only 33% of the total catch was red snapper, but for the vessels landing over 5,000 pounds in

---

[7]SR-1; E.R.A.R., IV-5; A.9.A.R., Tab 12 at 24-26.

[8]SR-3; E.R.A.R., Tab III-32 at 3.

1991, the percentage of red snapper "increased dramatically." [9]

The questionable aspect of the endorsement system is not the 5,000 pounds landings qualifier, but rather the inability of a non-qualifying fishermen, one without an adequate historical catch, ever to obtain an endorsement. The present endorsement system permanently divides and stagnates the red snapper fishery into two groups, those with endorsements and those without. Endorsements are precluded to those with a low catch history. This results in both groups shrinking.[10] Plaintiffs have not challenged this aspect of the endorsement system, and the Court, therefore, does not address it.

The record reflects that the Council considered various alternatives in attempting to reach a "fair and equitable result" in allocating the red snapper fishery.[11] The record also shows that the industry fishermen participated in the deliberations of

---

[9]SR-3 at 22. The Council examined data from the years 1991 and 1992. The 1991 data was given greater weight and considered more representative of the traditional fishery because of the 1992 derby.

[10]Ironically, this result is likely a good one for the red snapper stock because, presumably, fewer fishermen will take fewer red snapper and improve the stock. The record indicates that the red snapper stock is in great need of protection, and that greater emphasis should be placed on that goal then has been placed in the past. For example, the targeted 20 percent spawning stock potential ratio ("SPR") has never been reached during the period of regulation and the target SPR year has been moved further into the future several times.

[11]E.R.A.R., Tab III-17; E.R.A.R., Tab III-50.

the endorsement system.    The Court concludes that the endorsement system does not violate national standard 4.

### National Standard 5

Plaintiffs contend that the endorsement system violates national standard 5 because it is solely an economic allocation of the fishery, and not a conservation measure.    Plaintiffs point out that NMFS increased the total allowable catch for red snapper in 1993 from 4.0 to 6.0 million pounds (a 50% increase over 1992). Further, recreational fishermen are not affected by the endorsement system as allowable trip limits of seven (7) snapper per person continues through 1995.

Plaintiffs restricted interpretation of the word "conservation" is not supported by the Magnuson Act regulations:

> An allocation scheme may promote conservation by encouraging a rational more easily managed use of the resource. Or it may promote conservation (in the sense of wise use) by optimizing yield in terms of size, value, market mix price, or economic or social benefit of the product.

50 C.F.R. § 602.14(c)(3)(ii).    Further, "[e]fficiency in terms of aggregate costs then becomes a conservation objective, where conservation constitutes wise use of all resources involved in the fishery, not just fish stocks."    50 C.F.R. § 602.15(b)(2).

Allocation systems, which at first glance may appear to be purely economic measures, are not unusual under the Magnuson Act. See, e.g. Sea Watch International v. Mosbacher, 762 F. Supp. 370 (D.D.C. 1991) (limited access fishery allocation for the atlantic surf clam fishery); Alaska Factory Trawler Assoc. v. Baldridge, 831

F.2d 1456 (9th Cir. 1987) (sablefish allocation favoring longline fishermen over pot and trawler fishermen); and <u>National Fisheries Institute Inc. v. Mosbacher</u>, 732 F. Supp. 210 (D.D.C. 1990) (upholding FMP which prohibited the sale of billfish to prevent development of a commercial billfish market, to conserve billfish for recreational use.)   Economic measures are not prohibited if implemented to achieve the greater purpose of conservation and management.

Further, the Court notes that the endorsement system serves some conservation purposes.  The endorsement system will promote enforcement of catch limitations by requiring better monitoring of the catch and more meaningful records keeping.  In addition, the endorsement system allows the continued collection of historical red snapper landings data which is needed to evaluate alternatives for long-term management of the fishery.  <u>However, the Court finds little in the record to show real concern for the red snapper stock, and wonders how long NMFS will wait before addressing the long-term biological health of the red snapper stock.</u>

### Conclusion

In an effort to prevent the reoccurrence of the 1992 derby-like fishing season, the Secretary implemented the endorsement system and reef fish permit moratorium to limit access to the red snapper fishery. The administrative record demonstrates that the 5,000 pounds landings qualifier was arrived at after review of past catch landings, consideration of dependency on the red snapper

fishery, consideration and rejection of other options, and opportunity for public comment and input. The decision of the Secretary is rational where challenged. Plaintiffs' motion for summary judgment is denied and defendant's motion for summary judgment is granted.

ORDERED this ____/____ day of _____, 1995.

H. W. HEAD, JR.
UNITED STATES DISTRICT JUDGE

United States District Court
Southern District of Texas
ENTERED

MAY 02 1995

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

LINDEL FAIR, ET AL.                §
                                   §
VS.                                §        C.A. NO. C-93-022
                                   §
UNITED STATES OF AMERICA           §

## FINAL JUDGMENT

Judgment is entered for defendant.  Each party shall bear its own costs.

ORDERED this _____/_____ day of _____, 1995.


_____
H. W. HEAD, JR.
UNITED STATES DISTRICT JUDGE