**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| SOUTHEASTERN FISHERIES ASSOCIATION, INC., et al., | ) ) ) ) | |
| *Plaintiffs* | ) ) | |
| v. | ) ) | Case No. 26-cv-1533 |
| HOWARD LUTNICK, in his official capacity as Secretary of Commerce, et al., | ) ) ) ) | |
| *Defendants* | ) ) ) ) | |

**PLAINTIFFS' OPPOSITION TO FEDERAL DEFENDANTS' MOTION FOR
ENLARGEMENT OF TIME TO FILE RESPONSIVE PLEADING (ECF 36)**

This case is ready for briefing and resolution on the merits. Federal Defendants ask for delay, but they state no reason—much less good cause—supporting the request. The Court should deny Federal Defendants' Motion for Enlargement of Time to File Responsive Pleading and To Produce Administrative Record and for Expedited Consideration Thereof (ECF 36) ("Federal Defendants' Motion"). The Court further should order Federal Defendants to file their responsive pleading and produce the Administrative Record by the original deadline of July 10, and establish an expedited briefing schedule for summary judgment.

**There Is No Good Cause for Delay**

The most straightforward reason for denial of Federal Defendants' Motion is that it fails to clear even the low bar for extensions of time. Federal Rule of Civil Procedure 6(b) governs

1

extensions, and it requires that extensions be justified based on "good cause." Fed. R. Civ. P. 6(b)(1).

Federal Defendants identify no good cause for an extension of time to answer the complaint. Their Motion simply states that the challenged Exempted Fishing Permits (EFPs) have been revoked, and that the four South Atlantic states have "referenced their intent to submit revised applications in the future." ECF 36 at 2. It further indicates that "If one or more states apply for a new EFP, the public will be given a 15- to 45-day opportunity to comment . . . prior to the issuance of any new EFPs." *Id.*

To the extent Federal Defendants provide any reasoning in support of delay, it is as follows: "the requested enlargement of time will enable the parties to confer and propose an appropriate schedule for further proceedings including the filing of a supplemental pleading, if necessary." *Id.* at 3.

This is spurious. Plaintiffs have made clear to Federal Defendants—in writing—that any future EFPs remain speculative, and the possibility of such future actions provides no basis for delaying the instant litigation: "With respect to any forthcoming new applications from the states, and any EFPs that ultimately may be issued, Plaintiffs' position is that such EFPs are best evaluated on their merits if and when they are issued. At present they remain speculative, so our view is that it is best to simply proceed with the litigation." Email from Seth Atkinson to Mark Brown (June 29, 2026) (Exhibit 1).

Filing a supplemental pleading is always possible—in any litigation—and the notion that such an eventuality might arise in a case does not constitute good cause for delay. This is particularly true in fishery management cases, because management actions occur at a relatively frequent pace. There is always a "next thing" coming down the pike, and substantial time and

resources can be used if parties wait for upcoming actions to come into focus and be added to a challenge. *See, e.g.*, *Slash Creek Waterworks, Inc. v. Lutnick*, No. 23-cv- 1755-RC, Docket Entries 21–42 (over six months and many additional filings spent on addressing subsequent management actions).

Beyond their concern with "the filing of a supplemental pleading, if necessary," ECF 36 at 3, Federal Defendants' Motion provides no justification for an extension of time. Not even the barest bones of a reason appear. *See id.* at 1–3. So while other considerations also support denying their Motion, *see infra*, the simplest reason for denial is that Federal Defendants have failed to meet the Rule 6(b) standard of "good cause."

If the drafters of the Federal Rules had intended for extensions to be granted automatically, they could have so provided. They did not, and parties must actually explain why an extension is needed. Fed. R. Civ. P. 6(b)(1); *see also Pinson v. U.S. Dep't of Justice*, No. 18-cv-486-RC, Slip Op. at 11–12 (D.D.C. Aug. 5, 2021) (Contreras, J.) ("this Court has ensured that 'good cause' to extend deadlines has existed at all relevant times"); *id.* at 13 ("The Court has not granted additional time without 'good cause.'"). That standard simply is not met here.

**Timely Resolution of the Merits Is Important**

The legal issue in this case boils down to whether Federal Defendants have authority under the Magnuson-Stevens Act to exempt themselves from the Act's substantive requirements, through use of EFPs. Resolving this issue is important, given Federal Defendants' regular use of EFPs in fishery management. For example, Defendants have stated they may grant new South Atlantic red snapper EFPs later this year, *see* ECF 36 at 2, as well as in 2027 and 2028, *see* ECF 7-10 at 1 (noting "future EFP applications in 2027 and 2028").

The legal question in this case is particularly relevant for any EFPs that may be granted later this year because, as explained below, recreational landings are accruing by the day and may have already exceeded the 2026 South Atlantic red snapper Recreational Annual Catch Limit. As a result, it may not be possible for Federal Defendants to issue EFPs allowing recreational red snapper landings this year without running into the same legal issue.

The applicable Recreational Annual Catch Limit for South Atlantic red snapper this year is 22,797 landed fish. *See* 90 Fed. Reg. 24,527, 24,529 (June 11, 2025), *codified at* 50 C.F.R. § 622.193(y); *see generally* ECF 6-1 at 9–13 (describing problem of recreational dead discards, which constitute the majority of South Atlantic red snapper catch). The Recreational Annual Catch Limit is stock-based, and therefore includes fish caught in both state waters and federal waters. In recent years, the recreational fishery has hit its annual catch limit with between one and three days of open season. *See, e.g.*, 90 Fed. Reg. at 24,530 (providing 2-day open season last year).

A matter of hours after this Court issued its injunction on May 21, 2026, Defendant-Intervenor Florida Fish & Wildlife Commission (FWC) changed Florida state regulations to open red snapper fishing in state waters, and to increase the retention limit (i.e., "bag limit") from one fish to two. *See* FWC Executive Order Rescinding EO 26-11 (May 21, 2026), *available at* https://myfwc.com/media/xf1la43e/eo-26-16.pdf; *see also* FWC Executive Order EO 26-11 (May 15, 2026), *available at* https://myfwc.com/media/pl3pdgzz/eo-26-11.pdf.

Defendant-Intervenor FWC simultaneously issued a public statement criticizing a "rogue federal judge" who was "block[ing] Floridians from exercising their right to fish," and made clear that its responsive action—increasing the bag limit from one to two fish—was intended "to

ensure our anglers can get out on the water" to catch red snapper despite the Court's ruling.[1] *See* Exhibit 2; *see also* Exhibit 3 (FWC social media post saying "Come and Take it" with respect to red snapper).

Florida's governor similarly encouraged anglers to go fishing regardless of the injunction, saying the following at a press conference:

> And so, uh, FWC, uh, for those who are plan to go Memorial Day, they're they're going to say do do your state waters and and and do do what you got to do within the context, uh, of the overall rules. Uh, but and we're not going to be out in federal waters uh, policing this.

Exhibit 4 (transcript of DeSantis press conference). The governor underscored for a second time that "we're not going to be involved in policing federal the federal waters," *id.*, which is a remarkable position to take, given the joint enforcement agreement that exists between Florida and the federal government. *See* Cooperative Enforcement Agreement (July 1999), *available at* https://floridadep.gov/sites/default/files/Coop_enforcement_agreement071299.pdf (original version, which still exists as amended).

From these official statements and actions, many anglers reasonably concluded that Defendant-Intervenor FWC's enforcement staff would be ignoring the closure of federal waters, meaning that red snapper was—as a de facto matter—open for the recreational sector. *See, e.g.*, Exhibit 5 (social media post encouraging illegal red snapper fishing); Exhibit 6 (social media post noting that "State of Florida Red Snapper season is rolling despite the rogue federal judge in

---

[1] While FWC's action nominally affected only state waters, it is common knowledge that in Northeast Florida (the center of abundance for South Atlantic red snapper), the large, targeted red snapper are located in Federal waters. *See, e.g.*, Beverly Sauls & Dominique Lazarre, SEDAR90-RD-05: Recreational Effort, Catch and Biological Sampling in Florida During the 2019 South Atlantic Red Snapper Season, at 12, 14 (Mar. 2025), *available at* https://sedarweb.org/documents/sedar-90-rd05-recreational-effort-catch-and-biological-sampling-in-florida-during-the-2019-south-atlantic-red-snapper-season.

Washington DC"); *id.* (stating "the 2.86, 2.99 and 2.73 mile spots have been on fire," meaning anglers are attributing red snapper catch to locations inside state waters despite everybody knowing the catch comes from federal waters); Exhibit 7 (comments on social media ironically describing red snapper landings as coming from state waters).

Even if anglers were only landing fish caught in state waters, the fact remains that some amount of red snapper has been landed each day by the recreational sector since May 22. In previous years, the Recreational Annual Catch Limit was exhausted in a matter of a few days, yet this year, fishing has been occurring for a month and a half (and counting). In other words, the available landings under the Recreational Annual Catch Limit are decreasing, and may have already been used up. Going forward, Federal Defendants will be under pressure to issue EFPs that once again circumvent the Magnuson-Stevens Act's substantive requirements, so timely resolution of the legal issue in this case is important.

**Revocation of the Challenged Permits Does Not Change the Analysis**

Federal Defendants make a point of noting that they have rescinded the challenged EFPs. *See* ECF 36 at 2; ECF 36-1 to 36-4. But nothing about Federal Defendants' revocation of the challenged EFPs changes the outcome here. It is well established that voluntary cessation does not affect the jurisdiction of a federal court to review a challenged action. *See Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.,* 528 U.S. 167, 189 (2000) (noting "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice" (citation omitted)). This "holds for governmental defendants no less than for private ones." *FBI v. Fikre*, 144 S.Ct. 771, 777 (2024).

6

While the specific circumstances are not yet known, it is highly likely that the legal issue at stake in this case will recur—making it important to get that issue resolved by the Court in a timely manner.

*        *        *

Fundamentally, Defendants are asking to delay a case with a live and important controversy, and instead wait for potential future developments that could arrive months from now, if at all. The Court should reject that request. Instead, Plaintiffs recommend the Court provide an expedited timeline for briefing as follows:

| | |
|---|---|
| July 10, 2026 | Answer deadline (existing) |
| July 10, 2026 | Administrative record also due |
| July 24, 2026 | Plaintiffs' summary judgment motion due |
| August 7, 2026 | Defendants' combined opposition and cross-motion for summary judgment due |
| August 21, 2026 | Plaintiffs' combined opposition and reply due |
| August 28, 2026 | Defendants' reply due |

This schedule would accelerate production of the administrative record, as the record is simple and production is already underway. It then would use the default timeframes in Local Rule 7 of two weeks for motions/oppositions, and one week for replies. This timing is appropriate as the legal issue is fairly focused, and the parties already have briefed the matter once.

Dated:  July 6, 2026                    Respectfully submitted,

                                        /s/ Seth Atkinson
                                        Seth L. Atkinson (Bar ID CA00190)
                                        Quillback Consulting
                                        540 Meder Street
                                        Santa Cruz, CA 95060
                                        (203) 331-2792
                                        seth@quillbackconsulting.com

                                        *Attorney for Plaintiffs*