**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SOUTHEASTERN FISHERIES ASSOCIATION, INC., et al.,<br><br>*Plaintiffs*<br><br>v.<br><br>HOWARD LUTNICK, in his official capacity as Secretary of Commerce, et al.,<br><br>*Defendants* | Case No. 26-cv-1533-RC |

# PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS OR IN THE ALTERNATIVE FOR ABEYANCE (ECF 43 and 44)

## TABLE OF CONTENTS


INTRODUCTION .......... 1

BACKGROUND .......... 2

LEGAL STANDARD .......... 3

ARGUMENT .......... 4

I. The Challenged Conduct in This Case Is Defendants Using Exempted Fishing Permits to Circumvent Magnuson-Stevens Act Requirements .......... 4

II. Voluntary Cessation of the Challenged Conduct Does Not Moot This Litigation .......... 7

A. Defendants' Withdrawal of the Exempted Fishing Permits Constitutes Voluntary Cessation .......... 7

B. Defendants Reasonably Can Be Expected to Misuse Exempted Fishing Permits Again .......... 10

III. The Challenged Conduct Is Capable of Repetition While Evading Review .......... 14

A. The Duration of the Exempted Fishing Permits Was Too Short To Be Litigated Fully .......... 15

B. There Is a Reasonable Expectation that Plaintiffs Will Be Subjected to the Same Action Again in the Future .......... 16

IV. The Court Should Not Stay This Case .......... 17

V. The Court Should Not Extend Defendants' Deadline for the Administrative Record .......... 18

CONCLUSION .......... 19

## INTRODUCTION

Defendants believe they may use "exempted fishing permits" to circumvent the requirements of the Magnuson-Stevens Fishery Conservation and Management Act, 16 U.S.C. § 1801 *et seq.* In a stark example, Defendants in May issued exempted fishing permits to allow a massive amount of recreational fishing for South Atlantic red snapper. The permits were set to wildly overshoot the stock's annual catch limit, cause overfishing, and create a de facto reallocation of the stock due to the sudden increase in recreational landings—all clear statutory violations, but apparently permissible in the agency's view because they were accomplished via exempted fishing permit rather than an ordinary fishery management action.

After Plaintiffs filed suit and this Court preliminarily enjoined the exempted fishing permits, Defendants withdrew them. Defendants now argue the case is moot and should be dismissed. ECF 43, 43-1, 44.[1]

Defendants are wrong. The two main doctrinal exceptions to mootness—voluntary cessation and situations capable of repetition yet evading review—cover this situation. Pursuant to those doctrines, a live Article III controversy still exists and the Court retains jurisdiction. Were that not the case, Defendants would be able to preclude judicial review of any exempted fishing permit they felt was legally vulnerable. And Plaintiffs would be in the position of repeatedly chasing down illegal actions, only to have them disappear each time prior to adjudication on the merits.

[1] Plaintiffs herein address together Federal Defendants' motion (ECF 43) and the "joinder" of Intervenor-Defendants Florida Fish & Wildlife Conservation Commission (FWC) with that motion (ECF 44), unless otherwise specified. Defendant-Intervenors American Sportfishing Association (ASA) and Coastal Conservation Association (CCA) appear not to have filed anything in response to the Court's deadline of August 10, 2026, for a responsive pleading. *See* Minute Order (July 9, 2026) (establishing that the deadline "shall also apply to all Defendant-Intervenors' responsive pleadings").

The Court should deny Defendants' motion to dismiss. There is more than enough reason to believe this issue will recur and will affect Plaintiffs again in the future, which provides ample basis for both the voluntary cessation and capable-of-repetition-yet-evading-review doctrines.

Defendants, in the alternative, ask the Court to delay the case. They point to potential new exempted fishing permits for recreational red snapper fishing in the South Atlantic, and ask for a stay pending further developments with those permits. The Court should decline this invitation, as it is just another effort to avoid adjudication on the merits. There remains a live controversy here, and there is no need to wait for future developments.

The longer Defendants are able to avoid a definitive ruling on the core issue in this case—whether substantive Magnuson-Stevens Act requirements apply to exempted fishing permits—the more opportunities there will be for Plaintiffs and others to be harmed by Defendants' illegal statutory interpretation. The Court should deny Defendants' motion in its entirety, and proceed to the merits.

## BACKGROUND

For many years now, recreational dead discards have been the single largest contributor to fishing mortality for South Atlantic red snapper. Because so many fish are killed as dead discards on an ongoing basis, only a small amount of fish is available for actual harvest (i.e., landings). That small amount of landings is allocated out to the two sectors—recreational and commercial—and the National Marine Fisheries Service (NMFS) manages the sectors to stay within their small allocated amounts each year.

Frustrated with the situation, yet unwilling to deal with their dead discard problem, recreational advocacy groups and allied state agencies secured exempted fishing permits from

NMFS in May 2026, which purported to authorize a substantial increase in the amount of recreational fishing for South Atlantic red snapper. *See* ECF 7-1 to 7-4.

Plaintiffs and others pointed out that the allowed amount of fishing would violate several statutory requirements, *see* ECF 7-12, 7-11, but NMFS went ahead and issued the permits, on the theory that substantive Magnuson-Stevens Act requirements do not apply to exempted fishing permits, *see* ECF 22 at 15–16.

After expedited briefing, this Court preliminarily enjoined the exempted fishing permits. ECF 25 (order). The Court found Plaintiffs were likely to prevail in showing that exempted fishing permits must comply with the Magnuson-Stevens Act's substantive requirements, and that NMFS had arbitrarily and capriciously failed to consider this aspect of the problem in issuing the challenged permits. ECF 26 at 12–21 (memorandum opinion).[2]

With the permits temporarily enjoined and facing briefing on the merits, NMFS withdrew the challenged permits. ECF 36-1 to 36-4. Defendants now move to dismiss the case as moot. ECF 43, 44.

On the same day they moved to dismiss this case, Defendant NMFS published for public comment three new applications for exempted fishing permits, to authorize recreational fishing for South Atlantic red snapper. *See* 91 Fed. Reg. 51,467 (Aug. 10, 2026).

## LEGAL STANDARD

"In determining whether to grant a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure, the Court must construe

---

[2] The Court also found Plaintiffs were likely to be harmed irreparably by the overfishing that would result from the exempted fishing permits, as they rely on healthy oceans and fish stocks for their way of life, ECF 26 at 21–24, and that the balance of the equities and the public interest favored NMFS complying with the law, *id.* at 24–26.

the complaint in plaintiffs' favor and treat all well-pleaded factual allegations as true." *Bailey v. Bureau of Prisons*, 780 F. Supp. 3d 96, 113 (D.D.C. 2025) (Friedman, J.) (citing *Attias v. Carefirst, Inc.*, 865 F.3d 620, 627 (D.C. Cir. 2017)); *accord* ECF 43-1 at 4. The Court also may consider materials beyond the pleadings, to determine its jurisdiction. *See, e.g.*, *Fellowship of Christian Athletes v. Dist. of Columbia*, No. 24-cv-1332-DLF, slip op. at 12 (D.D.C. Feb. 3, 2026); *accord* ECF 43-1 at 4–5.

## ARGUMENT

There are two doctrinal exceptions to mootness: "the common one for actions capable of repetition yet evading review, and the related but narrower one addressing a defendant's voluntary cessation of the relevant conduct." *Alphabet Workers Union v. NLRB*, 134 F.4th 1217, 1225 (D.C. Cir. 2025) (cleaned up). This case is covered by both of the exceptions to mootness.[3] As a result, the Court retains subject matter jurisdiction and should proceed to the merits.

### I. The Challenged Conduct in This Case Is Defendants Using Exempted Fishing Permits to Circumvent Magnuson-Stevens Act Requirements

"Common to both exceptions [to mootness] is the task of defining the wrong that the defendant is alleged to have inflicted. What is the injury that is capable of repetition, and what are the 'old ways' to which the voluntarily ceasing defendant might return?" *Clarke v. United States*, 915 F.2d 699, 703 (D.C. Cir. 1990) (en banc) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953)). This question is resolved with reference to the parties' briefing and the underlying complaint. *See id.* at 703–04. The D.C. Circuit has made clear that courts should not "focus[] on whether the precise historical facts that spawned the plaintiff's claims are likely

[3] Defendants present argument and authority regarding standard mootness principles, *see* ECF 43-1 at 5–8, but that material is neither here nor there. The situation at hand is governed by mootness exceptions, not general mootness doctrine.

to recur, [but] rather [] whether the legal wrong complained of by the plaintiff is reasonably likely to recur." *Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316, 324 (D.C. Cir. 2009).

Here, the challenged conduct by Defendants is using an exempted fishing permit to circumvent, or violate, the substantive requirements of the Magnuson-Stevens Act. This is squarely reflected in Plaintiffs' complaint. *See* ECF 1 at 30 (under section of complaint describing "THE CHALLENGED AGENCY ACTION," first subheading reads "Planning to Sidestep the Magnuson-Stevens Act"); *id.* at 36 (setting forth sole claim for relief, which is entitled "DEFENDANTS LACK THE AUTHORITY TO ISSUE EXEMPTED FISHING PERMITS FOR SOUTH ATLANTIC RED SNAPPER THAT VIOLATE STATUTORY REQUIREMENTS AND/OR DOING SO HERE WAS ARBITRARY AND CAPRICIOUS").

While the Complaint does set forth specific facts about the challenged permits as necessary to establish Plaintiffs' standing, *see id.* ¶¶24–33, to explain why the claim falls outside 16 U.S.C. § 1855(f), *see id.* ¶¶8–22, and to connect the factual context with certain statutory requirements, *see id.* ¶¶109–130, those facts mostly constitute "[t]he unrepeatable particulars" of the case, which "are irrelevant to [the operative] legal theory." *Del Monte*, 570 F.3d at 325.

The core of Plaintiffs' argument was—and remains—that Defendants cannot use exempted fishing permits to avoid statutory requirements. This legal theory is set forth clearly in the operative paragraphs tying together the single claim presented in the complaint:

> 143. Defendants do not have the power, under the Magnuson-Stevens Act, to waive application of statutory requirements to a fishery.
>
> 144. Phrased differently, the Magnuson-Stevens Act does not allow Defendants to do anything through the challenged Exempted Fishing Permits that they would not be able to do otherwise in ordinary fishery management under the Act.

> 145. Yet the Exempted Fishing Permits purport to allow the states to set recreational red snapper open seasons that NMFS itself never would be able to set, under the conservation requirements of the Act.
>
> 146. Because Defendants lacked authority to issue the Exempted Fishing Permits, their actions were "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C).
>
> 147. Alternatively, Defendants' actions in issuing the Exempted Fishing Permits were "arbitrary, capricious . . . or otherwise not in accordance with law." *Id.* § 706(2)(A).

ECF 1 ¶¶143–147.

Plaintiffs' briefing at the preliminary injunction stage reflected precisely the same focus—on Defendants' use of exempted fishing permits to circumvent statutory requirements. *See* ECF 6-1 at 32–35 (section tying together Plaintiffs' argument on the merits, entitled "NMFS Has No Authority to Exempt Itself From the Substantive Requirements of the Magnuson-Stevens Act"); *id.* at 33 (top of same section, stating very directly: "*The main question in this case, then, is whether NMFS has the power to take that same action* [i.e., one that violates substantive requirements of the Act] *through the use of an 'exempted fishing permit.' And the answer is no*." (emphasis added)).

Defendants' briefing at the preliminary injunction stage, correspondingly, argued the agency did in fact have authority to take an action via exempted fishing permit that otherwise would violate the substantive requirements of the Magnuson-Stevens Act. *See* ECF 22 at 15 (first argument on the merits, asserting that the Act's substantive requirements "do not apply to such agency actions [i.e., exempted fishing permits]").

At the motion hearing, Plaintiffs' arguments again centered on the agency's use of exempted fishing permits to violate statutory requirements. Specifically, Plaintiffs observed that Defendants' arguments regarding legality were so extreme that the Court did not need to dwell

overly much on the factual specifics; the merits essentially came down to a simple question of statutory interpretation.

Thus the litigation record reflects that the challenged conduct in this case is Defendants' use of exempted fishing permits to circumvent substantive requirements of the Magnuson-Stevens Act. *See generally Del Monte*, 570 F.3d at 323–26.

## II. Voluntary Cessation of the Challenged Conduct Does Not Moot This Litigation

"It is well settled that 'a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.'" *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (quoting *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982). "[T]he standard . . . for determining whether a case has been mooted by the defendant's voluntary conduct is stringent: 'A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Id.* (quoting *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203 (1968)).

### A. Defendants' Withdrawal of the Exempted Fishing Permits Constitutes Voluntary Cessation

As a threshold matter, "[f]or the voluntary cessation exception to apply, the defendants' voluntary cessation must have arisen *because of* the litigation." *Bailey*, 780 F. Supp. 3d at 117 (cleaned up) (emphasis in original); *see also Citizens for Resp. & Ethics in Wash. v. Wheeler*, 352 F. Supp. 3d 1, 13 (D.D.C. 2019) (Boasberg, J.) ("The voluntary-cessation exception to the mootness doctrine does not apply when the voluntary cessation of the challenged activity occurs because of reasons unrelated to the litigation." (cleaned up)).

Here, Defendants' actions provide a straightforward example of voluntary cessation due to litigation. At the preliminary injunction stage, they vigorously maintained the legality of the

challenged action. *See* ECF 22, at 15–25. Upon receiving an initial loss in court, however, they withdrew the challenged action, *see* ECF 36-1 to 36-4, and moved to dismiss the case as moot, ECF 43. On these facts, it is not difficult to conclude that Defendants are "seeking to 'erase an unfavorable decision from the books.'" *Alaska v. U.S. Dep't of Agric.*, 17 F.4th 1224, 1230 (D.C. Cir. 2021) (quoting *Nat'l Black Police Ass'n v. Dist. of Columbia*, 108 F.3d 346, 352 (D.C. Cir. 1997)).

The only argument offered by Defendants against this conclusion is that the Federal Government cannot be held responsible for withdrawal of the permits, because the states requested it. *See* ECF 43-1 at 8–9. There are at least two problems with this, though.

First, as a formal matter, Federal Defendants are the ones who actually withdrew the permits. In the same way that they had to issue the permits—as an independent action based on their own review and decision—Federal Defendants also made the affirmative choice to withdraw the permits. They bear sole responsibility for implementing the Magnuson-Stevens Act, *see* 16 U.S.C. §§ 1854(a)–(c), 1855(c)–(d), 1861(a), 1867(d), and the legal consequences of their actions cannot be deflected by pointing fingers at others.

Second, as a practical matter, Defendants' argument slices the salami too thinly. There was some tension early on between career staff at Defendant NMFS and the group of lobbyists, politicians, and state agencies pushing the plan to expand recreational red snapper fishing, but by the time the final applications were submitted and NMFS approved the permits, political pressure had prevailed and Federal Defendants were fully aligned with the effort. Defendant Lutnick personally signed off on the permits, *see* ECF 22-4 at 6, Defendant NMFS issued the permits, *see* ECF 7-1 to 7-4, and the President of the United States even took credit for the action, *see* Exhibit 1 (Truth Social post stating, "To all those who fish 'Red Snapper' — TRUMP and

NOAA are delivering for you. ENJOY!! President DONALD J. TRUMP."); Exhibit 2 (Florida Governor echoing Presidential statement); Exhibit 3 (press release from Defendant-Intervenor Florida FWC "applaud[ing] federal approval" of the permits, and providing supportive quotes from Defendant-Intervenors ASA and CCA).

Similarly, this group of federal and state politicians, lobbyists, and state agencies responded in unison when the Court issued its preliminary injunction. The President himself saw fit to criticize the Court via an AI-generated cartoon, *see* Exhibit 4, and the Florida Governor took unscheduled time out of a press conference to condemn "a judge in Washington DC [who] probably doesn't know the first thing about fishing," ECF 38-5 at 1. Members of Congress tweeted "This cannot be allowed to stand," Exhibit 5, and one even introduced legislation to punish commercial fishermen for participating in the case, *see* Exhibit 6. Defendant-Intervenor Florida FWC called this Court "rogue," because it was "block[ing] Floridians from exercising their right to fish," ECF 38-3; other state officials made similar comments, *see, e.g.*, Exhibit 7.

With the Commander in Chief—the decision-maker above both Federal Defendants—in lockstep with the states and recreational advocacy groups, it is not credible for Federal Defendants to distance themselves from the permit withdrawal. Fundamentally, there is a reason why Federal Defendants share the same side of the "v." here with Defendant-Intervenors Florida FWC and ASA/CCA.

Moreover, none of the case law supports parsing a defendant's cessation this finely. The cases where voluntary cessation doctrine is held to be inapplicable, due to the cessation not being "voluntary," are situations where there is a gross disconnect between the defendant and the withdrawal of the challenged action. *See, e.g.*, *Alaska*, 17 F.4th at 1230–31 (petition granted due to change in Presidential administration); *Oceana, Inc. v. Raimondo*, No. 20-5362, slip op. at 1

(D.C. Cir. Oct. 1, 2021) (per curiam) (new biological opinion produced due to court order in separate case); *Am. Bar Ass'n v. Fed. Trade Comm'n*, 636 F.3d 641, 648 (D.C. Cir. 2011) (policy overridden by Act of Congress); *see also Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 72 (1983) (per curiam) (separate university decision to ban male-only club for university's own reasons, regardless of ongoing Federal Title IX enforcement); *McDonnell Douglas Corp v. Nat'l Aeronautics & Space Admin.*, 109 F. Supp. 2d 27, 29 (D.D.C. 2000) (defendant agency, in reverse-FOIA case, having nothing to do with decision by third-party FOIA requester to drop the contested request).

The facts in this case do not rise to that level. If anything, the public statements noted above—which reflect a shared disregard for the judicial process among those pushing the exempted fishing permits—make it relatively easy to conclude that the permit withdrawal here was a coordinated effort to "manipulate the judicial process." [4] *Alaska*, 14 F.4th at 1230. *See also Fellowship of Christian Athletes*, slip op. at 16 ("The fact that, shortly after the Court issued a preliminary injunction in this case, DCPS revised its guidance and then moved to dismiss FCA's claims as moot 'suggest[s]' at least 'arguable manipulation' of the Court's jurisdiction." (quoting *Pub. Citizen, Inc. v. FERC*, 92 F.4th 1124, 1128 (D.C. Cir. 2024))).

### B. Defendants Reasonably Can Be Expected to Misuse Exempted Fishing Permits Again

Once a defendant's voluntary cessation is established, the case is not moot unless it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth*, 528 U.S. at 189 (cleaned up).[5] This is a "heavy burden," which falls

---

[4] Federal Defendants' apparent indifference to the ongoing illegal red snapper harvest in Florida, *see* ECF 38 at 4–6, further supports this conclusion.

[5] Some cases frame it as a two-prong test, in which a defendant must satisfy both conditions to establish mootness. *See, e.g.*, *Larsen v. U.S. Navy*, 525 F.3d 1, 4 (2008) ("voluntary cessation of

on the party asserting mootness. *Id.* (internal quotation omitted). And the Supreme Court recently made clear that the same standard "holds for governmental defendants no less than for private ones." *FBI v. Fikre*, 144 S. Ct. 771, 777 (2024).[6]

Here, Defendants are far from showing it is "absolutely clear" they will not use exempted fishing permits to circumvent substantive requirements of the Magnuson-Stevens Act again in the future. To the contrary, it is quite likely that Defendants will misuse exempted fishing permits again.

There are a number of concrete upcoming instances of exempted fishing permits that have the potential to affect Plaintiffs, including expected new South Atlantic recreational red snapper exempted fishing permits later this year, *see* ECF 36 at 2, as well as further permits for 2027 and 2028, *see* ECF 7-10 at 1 (noting "future EFP applications in 2027 and 2028"). Beyond South Atlantic red snapper, there is pressure throughout the Southeast to use exempted fishing permits to manage more recreational fisheries. *See, e.g.*, Louisiana Department of Wildlife and

---

a challenged practice moots a case only if the defendant shows that: (1) there is no reasonable expectation that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation" (cleaned up)). The second prong is applied by courts only intermittently, however, and its function is somewhat unclear insofar as it closely resembles the underlying mootness determination (from which voluntary cessation doctrine provides an exception). For clarity, Plaintiffs omit that aspect from discussion here.

[6] There are a number of statements in the case law suggesting that government defendants should receive a favorable presumption, either at the stage of determining voluntary cessation or when analyzing the likelihood of recurrence. *See, e.g.*, *Alaska*, 17 F.4th at 1227; *People for Ethical Trtmt. of Animals v. U.S. Dep't of Agric.*, 918 F.3d 151, 157 (D.C. Cir. 2019); *Clarke*, 915 F.2d at 705; *Lewis v. Becerra*, No. 18-cv-2929-RBW, slip op. at 21 (D.D.C. June 8, 2023) (Walton, J.); *New York v. Raimondo*, No. 19-cv-09380, slip op. at 4 (S.D.N.Y. April 9, 2021); *Citizens for Resp. & Ethics in Wash. v. Wheeler*, 352 F. Supp. 3d 1, 13–14 (D.D.C. 2019) (Boasberg, J.). These statements are on uncertain ground—at best—after the Supreme Court stated unequivocally in *Fikre* that voluntary cessation doctrine applies to "governmental defendants no less than [] private ones." 144 S. Ct. at 777; *see Fellowship of Christian Athletes*, slip op. at 17 (recent case, "reject[ing] the defendants' invitation to adopt a more lenient mootness burden for government defendants," given the Supreme Court's clarification in *Fikre*).

Fisheries, Exempted Fishing Permit Application (Aug. 7, 2026) (request for similar exempted fishing permit for Louisiana to manage recreational fishing for Gulf amberjack), *available at* https://gulf-council-media.s3.amazonaws.com/uploads/2026/08/B-11aii-LDWF-GAJ-EFP.pdf. And nationwide, the current Administration is promoting exempted fishing permits as a way of managing difficult fisheries. *See* Exec. Order No. 14,278, Sec. 4(c), 90 Fed. Reg. 16,993, 16,994 (Apr. 22, 2025) ("As soon as practicable, the Secretary of Commerce shall expand exempted fishing permit programs to promote fishing opportunities nationwide.").

The political pressure driving Defendants' misuse of exempted fishing permits has not gone away, either. Recreational lobbying groups, Members of Congress, state agencies, and even the President continue to push for expanded recreational fishing, with little regard for the substantive requirements of the Magnuson-Stevens Act. *See supra* pages 8–9.

Nor have Defendants indicated any change in position, with respect to whether substantive Magnuson-Stevens Act requirements apply to exempted fishing permits. After arguing at the preliminary injunction stage that such requirements do not apply, *see* ECF 22 at 15–16, their silence here speaks volumes. *See, e.g.*, *Knox v. Serv. Emps. Int'l Union*, 567 U.S. 298, 307 (2012) ("[S]ince the union continues to defend the legality of the [challenged] fee, it is not clear why the union would necessarily refrain from collecting similar fees in the future."); *West Virginia v. EPA*, 142 S. Ct. 2587, 2607 (2022) (noting when defendant " 'vigorously defends' the legality" of the challenged action, it can suggest likelihood of recurrence); *Am. Clinical Lab. Ass'n v. Becerra*, 40 F.4th 616, 623 (D.C. Cir. 2022) (noting continued defense of challenged action as relevant for likelihood of recurrence); *Fellowship of Christian Athletes*, slip op. at 16–17 ("Federal courts do not dismiss a case as moot where, as here, the defendants vigorously defend the challenged conduct and nowhere suggest that they would not resume that

conduct were the litigation to be resolved in their favor." (cleaned up)); *DL v. Dist. of Columbia*, 187 F. Supp. 3d 1, 12 (2016) (Lamberth, J.) ("the District's decision to contest liability also makes it more difficult to show there could be no reasonable expectation of recurrence").

The nature of the withdrawal in this case further reinforces the likelihood of recurrence. In some situations a defendant's withdrawal of challenged conduct may appear relatively durable, to the extent it is accomplished via a procedure that is difficult to reverse. *See, e.g.*, *Alaska*, 17 F.4th at 1229 n.5 ("Courts have noted that structural obstacles to reimposing a challenged law—such as a full repeal and the need to undertake new lawmaking—generally moot a case. Meanwhile, actions that can be reversed at the stroke of a pen or otherwise face minimal hurdles to re-enforcement can thwart mootness." (citations omitted)); *Nat'l Black Police Ass'n*, 108 F.3d at 349–50 (giving weight to withdrawal via passage of municipal legislation); *Lewis v. Becerra*, No. 18-cv-2929-RBW, slip op. at 22 (D.D.C. June 8, 2023) (Walton, J.) (finding challenged action not likely to recur, given that reversal would require rescinding a notice and a final rule and engaging in a new round of notice-and-comment-rulemaking). *But see Am. Clinical Lab. Ass'n*, 40 F.4th at 623 (finding possibility of recurrence even when it would require rulemaking).

Here, recurrence is very easy. It is the quintessential "stroke of a pen" situation, *Alaska*, 17 4th at 1229 n.5, as Defendants can issue exempted fishing permits unilaterally and outside the ordinary council-based fishery management process. Withdrawal of the challenged conduct represents very little in terms of institutional inertia, and it is correspondingly simple for Defendants to resume the conduct once scrutiny from the Court ceases. *Cf. Fikre*, 144 S. Ct. at 777–79 (likelihood of recurrence found when withdrawn action was merely a one-off determination about an individual's status on the No Fly List); *True the Vote, Inc. v. Internal*

*Revenue Serv.*, 831 F.3d 551, 562–63 (D.C. Cir. 2016) (possible recurrence of internal agency practice of discriminatory processing for politically-affiliated applicants); *Bailey*, 780 F. Supp. 3d at 116–19 (no reason conduct cannot recur when challenged action was agency illegally blocking an individual from using prison communication system).

Overall, Defendants cannot show it is "absolutely clear" they will not use exempted fishing permits to circumvent Magnuson-Stevens Act requirements again in the future. *Friends of the Earth*, 528 U.S. at 189. And this is precisely why the case continues to present a live controversy: because a declaratory judgment on the legality of the challenged conduct would affect the rights and obligations of the parties going forward. *See, e.g.*, *Clarke*, 915 F.2d at 703 (noting that likelihood of recurrence is the reason that, "despite the apparent demise of the controversy, its resolution has a reasonable chance of affecting the parties' future relations"); *DL*, 187 F. Supp. 3d at 6 (explaining that in a voluntary cessation case, "a court could still grant the plaintiff effectual relief—namely, the relief sought in the first place" (cleaned up)).

## III. The Challenged Conduct Is Capable of Repetition While Evading Review

"Under the capable of repetition yet evading review exception to mootness, the plaintiff must demonstrate that '(1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party would be subjected to the same action again.'" *Del Monte*, 570 F.3d at 322 (quoting *Clarke*, 915 F.2d at 704).

The capable-of-repetition-yet-evading-review exception to mootness is " 'the common one,'" *Alphabet Workers Union*, 134 F.4th at 1225 (quoting *Clarke*, 915 F.2d at 703), because it does not require finding that a defendant voluntarily ceased the challenged conduct. *Cf. supra*

Section II.A. Instead, it merely requires the challenged action to be short in duration, combined with a higher threshold for the likelihood of recurrence. Here, both elements are met.

### A. The Duration of the Exempted Fishing Permits Was Too Short To Be Litigated Fully

Generally speaking, "[t]o evade review, the challenged action must be incapable of surviving long enough to undergo Supreme Court review." *United Bhd. of Carpenters & Joiners of Am. v. Operative Plasterers' & Cement Masons' Int'l Ass'n*, 721 F.3d 678, 688 (D.C. Cir. 2013). In the D.C. Circuit, there is a general rule of thumb that "agency actions of less than two years' duration cannot be fully litigated prior to cessation or expiration, so long as the short duration is typical of the challenged action." *Del Monte*, 570 F.3d at 322 (internal quotation omitted).

The challenged exempted fishing permits in this case were issued in early May, and were "valid through December 31, 2026." ECF 7-1 at 1. The actual fishing activity permitted was even shorter, wrapping up on October 18, 2026, for Florida, *see id.* at 2, and on August 31, 2026, for the other states, *see* ECF 7-2 at 2. Thus the permits had a formal duration of around eight months, and a practical duration of four to six months. This is well within the two-year threshold used by the D.C. Circuit for actions that evade review. *See Del Monte*, 570 F.3d at 322.

A short duration, moreover, is characteristic of exempted fishing permits. *See* 50 C.F.R. § 600.745(b)(5) ("Duration. Unless otherwise specified in the [exempted fishing permit] or a superseding notice or regulation, an [exempted fishing permit] is valid for no longer than 1 year."). For this reason, " 'the activity challenged is *inherently* of a sort that evades review.'" *Lewis*, slip op. at 17 (quoting *Campbell v. Clinton*, 203 F.3d 19, 34 (D.C. Cir. 2000)) (emphasis in original); *see also Humane Soc'y of U.S. v. EPA*, 790 F.2d 106, 113 (D.C. Cir. 1986) ("The

one-year life span of the [challenged] permits simply did not allow completion of the [judicial] process prior to their demise.”).

### B. There Is a Reasonable Expectation that Plaintiffs Will Be Subjected to the Same Action Again in the Future

The second element of the capable-of-repetition-yet-evading-review exception is conceptually the same as the second element of the voluntary cessation exception: recurrence of the challenged conduct in the future. But instead of the burden falling on the defendant to establish that it is “absolutely clear” the challenged conduct will not recur, *Friends of the Earth*, 528 U.S. at 189, the burden falls on the plaintiff to establish a “ ‘demonstrated probability that the same controversy will recur involving the same complaining party.’” *Am. Bar Ass’n*, 636 F.3d at 647 (quoting *Murphy v. Hunt*, 455 U.S. 478, 482 (1982) (per curiam)).

The precise verbal formulation varies from case to case, but the upshot is that “the same parties will encounter the same type of circumstances involving alleged violations of the same laws.” *Del Monte*, 570 F.3d at 326. *See also United Bhd. of Carpenters & Joiners*, 721 F.3d at 688 (framing it as “a reasonable degree of likelihood that the issue will be the basis of a continuing controversy between the two parties” (cleaned up)).

For the reasons set forth in Section II.B above, this requirement is satisfied here. Defendants are expected to issue further recreational red snapper exempted fishing permits for 2026, as well as more exempted fishing permits for 2027 and 2028. There is a broad push to manage more recreational fisheries with exempted fishing permits, and those behind that push fundamentally do not care about Magnuson-Stevens Act requirements like annual catch limits, avoiding overfishing, and adhering to established allocation ratios. *See supra* pages 8–9.

Given these circumstances, it is sufficiently likely that “the same parties will engage in litigation over the same issues in the future.” *United Bhd. of Carpenters & Joiners*, 721 F.3d at

688 (cleaned up). The mootness exception for situations capable of repetition yet evading review applies, and the case continues to present a live controversy. *See Clarke*, 915 F.2d at 703 (noting resolution of such a controversy "has a reasonable chance of affecting the parties' future relations").

**IV. The Court Should Not Stay This Case**

Failing outright dismissal, Defendants request a stay to see how the next round of exempted fishing permits turns out. ECF 43-1 at 11–13. This request is inappropriate and should be denied.

Requiring Plaintiffs to wait until the next round of exempted fishing permits is completed functionally has the same effect as dismissing the case: it withholds resolution on the merits of Plaintiffs' current claim for relief, and requires them to chase down another instance of the challenged conduct. If Plaintiffs do so successfully, another (insufficiently short) window of time would open to challenge that new conduct, after which Defendants would argue that the new conduct is moot and that Plaintiffs should wait and challenge yet the next instance. Whether the case is nominally stayed or dismissed between instances of the challenged conduct makes little difference.

For this reason, Defendants' request for a stay is simply a second bite at the apple for their mootness arguments. And to the extent Plaintiffs have established that the mootness exceptions apply, it would be inappropriate for the Court to grant Defendants a stay in this matter.

Moreover, the entire point of the doctrinal exceptions to mootness is to get off the treadmill that Defendants offer—i.e., challenging an action, having it expire or be withdrawn, and starting over. The mootness exceptions allow resolution of the merits in a plaintiff's initial

lawsuit *without waiting for future instances of the challenged conduct*. By doing so, they de-couple a single instance of challenged conduct from the ongoing churn of a defendant's actions, and allow a court to resolve the merits based on that instance alone.

What this means practically is that once a plaintiff has established the *general* likelihood of a controversy's recurrence, such that a mootness exception is determined to apply, the *specific* future instances of the challenged conduct no longer are necessary to incorporate into the original litigation. A plaintiff may well choose to continue tracking and challenging future instances of the conduct (either through new lawsuits or requests to amend the original complaint, as the plaintiff sees fit), but it is not a jurisdictional requirement. The original case can proceed irrespective of any future actions. *See, e.g.*, *Nat'l Wildlife Fed'n v. Costle*, 629 F.2d 118, 123 n.19 (D.C. Cir. 1980) (applying capable-of-repetition-yet-evading-review exception to mootness and noting, with respect to a subsequently-filed lawsuit on the same topic, "[t]he pendency of that case does not rob this court of jurisdiction to consider the legal issue raised by [the plaintiffs] in the present action").

Here, Plaintiffs have established sufficient likelihood that the challenged conduct will recur. *See supra* Sections II.B, III.B. The mootness exceptions apply, giving the Court jurisdiction, and the case should proceed to the merits. Plaintiffs may or may not decide to file suit against other exempted fishing permits in the future. They remain free to make that decision for their own reasons, and however they decide, it does not affect the Court's jurisdiction here.

## V. The Court Should Not Extend Defendants' Deadline for the Administrative Record

As a final request, Defendants ask for yet more time to produce the administrative record. ECF 43-1 at 13. This is just another attempt at delay, and it should be denied.

Defendants already have asked for—and been granted—an extension in this matter. The original deadline for answering the complaint was July 10, 2026. *See* ECF 29; Clerk's Docket Entry dated June 24, 2026 (setting response deadline of July 10, 2026). This meant under Local Rule 7(n)(1) the administrative record was due by August 10, 2026. Defendants requested a thirty-day extension of time for responding to the complaint, such that August 10, 2026, would be the deadline for both responding to the complaint and filing the administrative record. *See* ECF 36 at 1 (requesting a deadline of "August 10, 2026, to file a responsive pleading and to produce the administrative record concerning Plaintiffs' Complaint in the above-captioned matter"). Over Plaintiffs' opposition, *see* ECF 38, the Court granted the motion. *See* Minute Order (July 9, 2026) (establishing August 10, 2026, as deadline for Defendants to both "file their responsive pleading and produce the administrative record").

Defendants effectively used up the thirty-day gap between filing their answer and filing the administrative record, *see* Local Rule 7(n)(1), via the extension from July 10 to August 10. No further delay should be granted.

Furthermore, the record in this case is simple—and not even particularly important. Plaintiffs' position always has been that the merits can be argued solely with reference to already-available materials. *See* ECF 6 at 4–6, 7–9. Given this context, Defendants' request is just a transparent attempt to drag their heels and achieve, through slow-walking, what they cannot properly achieve through a motion to dismiss. It should be denied.

## CONCLUSION

For the reasons above, Plaintiffs respectfully request the Court deny Defendants' motions to dismiss (ECF 43 and 44), as well as the requests for abeyance and extension of deadlines.

Dated: August 17, 2026

Respectfully submitted,

/s/ Seth Atkinson
Seth L. Atkinson (Bar ID CA00190)
Quillback Consulting
540 Meder Street
Santa Cruz, CA 95060
(203) 331-2792
seth@quillbackconsulting.com

*Attorney for Plaintiffs*