**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| SOUTHEASTERN FISHERIES ASSOCIATION, INC., *et al.*, | : | |
| Plaintiffs, | : | Civil Action No.: 26-1533 (RC) |
| v. | : | Re Document No.: 43 |
| HOWARD LUTNICK, *et al.*, | : | |
| Defendants. | : | |

# MEMORANDUM OPINION

## DENYING DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR ABEYANCE

## I. INTRODUCTION

The exempted fishing permits the Plaintiffs challenge here have since been rescinded, and the dates of the red-snapper-fishing seasons they authorized have passed. Unless an exception applies, Plaintiffs' claims regarding the rescinded permits will be moot. Plaintiffs invoke both the sometimes-overlapping voluntary-cessation and capable-of-repetition-but-evading-review exceptions to mootness. Those exceptions exist to prevent mootness from becoming a loophole to evade federal judicial review. This is one of those rare occasions where Plaintiffs have shown that the same controversy between these parties is reasonably likely to recur, and that the short duration of the fishing permits at issue makes them otherwise susceptible of evading review. Consequently, the Court finds Plaintiffs' claims are not moot because they are capable of repetition yet evading review.

## II. BACKGROUND

The Court presumes familiarity with the facts as outlined in its memorandum opinion granting Plaintiffs' motion for a preliminary injunction. In brief, Plaintiffs are commercial fishing businesses, trade organizations, and individual commercial fishermen. They challenge four fishing permits issued in early May 2026 by the Secretary of Commerce ("Secretary") and the National Marine Fisheries Service ("NMFS") (collectively, the "Government") to four South Atlantic states. These exempted fishing permits ("EFPs") exempt certain recreational fishing data-collection activities from federal regulations promulgated under the Magnuson-Stevens Act ("MSA"), 16 U.S.C. § 1801 et seq., the primary federal law governing fishery management. The Court preliminarily enjoined the May EFPs from taking effect on May 21, 2026, finding Plaintiffs were likely to succeed on the merits of their claim that the Government acted arbitrarily and capriciously in granting EFPs that did not comply with the MSA. Mem. Op. Grant. Pls.' Mot. Prelim. Inj. ("PI Mem. Op.") 12–21, ECF No. 26.

A few weeks later, on June 18, 2026, Georgia Department of National Resources ("GADNR") issued a letter to NMFS asking to withdraw its application and relinquish its May EFP. Fed. Defs.' Mot. Dismiss ("Defs.' MTD") Ex. A, ECF No. 43-2. The next day, June 19, 2026, Florida Fish and Wildlife Conservation Commission ("FWC"), North Carolina Division of Marine Fisheries ("NCDMF"), and South Carolina Department of Natural Resources ("SCDNR") submitted similar letters. Defs.' MTD Exs. B, C, D, ECF Nos. 43-3 through 43-5.

A week later, on June 26, 2026, NMFS rescinded the four May EFPs. ECF Nos. 36-1 through 36-4. Two weeks after that, on July 10, 2026, FWC, GADNR and SCDNR submitted new EFP applications. Defs.' MTD Ex. 1, Second Decl. Timothy R. Petty Ph.D. ("Petty Decl.") ¶ 11, ECF No. 43-2. On August 10, 2026, NMFS published a notice in the Federal Register

regarding the new applications. *Id.* ¶ 12. About 40 days later, on September 21, 2026, the Government issued EFPs to FWC, SCDNR, and GADNR. FWC Notice Recent Devs. Relevant Pending MTD ("FWC Notice") 1, ECF No. 51. On October 5, 2026, a group of plaintiffs filed a complaint challenging the September EFPs. *Id.* at 3.

The Government submitted a motion to dismiss or, in the alternative, to hold the case in abeyance, arguing that Plaintiffs' claims are moot the same day it published notice of the new applications on August 10, 2026. Fed. Defs.' Mem. Supp. MTD ("Defs.' Mem. MTD") 1, ECF No. 43-1. Defendant-Intervenor FWC joined the Government's motion also on August 10, 2026. ECF No. 44. Plaintiffs submitted a memorandum in opposition on August 17, 2026. Pls.' Opp'n to Defs.' MTD ("Pls.' Opp'n"), ECF No. 45. The Government replied in support of its motion to dismiss on August 24, 2026, and FWC joined that reply the same day. Fed. Defs.' Reply Mem. Support MTD ("Defs.' Reply"), ECF No. 46; FWC Notice Joinder Reply, ECF No. 47. On September 22, the Government submitted a Notice that it had issued the three new EFPs the previous day. Second Notice Issuance, ECF No. 50. On October 8, FWC submitted a notice that the September EFPs had been issued, and a lawsuit had been filed challenging the September EFPs. FWC Notice. At the Court's request, Plaintiffs responded to the FWC Notice on October 15, 2026. Pls.' Resp. FWC Notice, ECF No. 52. The motion is now fully briefed and ripe for the Court's consideration.

## III. LEGAL STANDARD

### A. Subject Matter Jurisdiction

In deciding a motion to dismiss under Rule 12(b)(1), a court must "accept as true all of the factual allegations contained in the complaint" and draw all reasonable inferences in favor of the plaintiff, *Brown v. District of Columbia*, 514 F.3d 1279, 1283 (D.C. Cir. 2008), but courts are

"not required . . . to accept inferences unsupported by the facts alleged or legal conclusions that are cast as factual allegations," *Rann v. Chao*, 154 F. Supp. 2d 61, 64 (D.D.C. 2001). Ultimately, the plaintiff bears the burden of establishing the court's jurisdiction, *McNutt v. Gen. Motors Acceptance Corp*., 298 U.S. 178, 182–83 (1936), and where jurisdiction does not exist, "the court cannot proceed at all in any cause," *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (quoting *Ex Parte McCardle*, 74 U.S. 506, 514 (1868). "It is well-settled that [a court] may consider materials outside the pleadings to determine [its] jurisdiction." *Jibril v. Mayorkas*, 101 F.4th 857, 866 (D.C. Cir. 2024), *cert. denied*, 145 S. Ct. 550 (2024) (quoting *Kareem v. Haspel*, 986 F.3d 859, 866 n.7 (D.C. Cir. 2021) (alteration in the original).

**B. Mootness**

Mootness is a challenge to a court's jurisdiction to hear a claim. *North Carolina v. Rice*, 404 U.S. 244, 246 (1971) ("Mootness is a jurisdictional question because the Court 'is not empowered to decide moot questions or abstract propositions.'") (quoting *United States v. Alaska S.S. Co*., 253 U.S. 113, 116 (1920)). When a court can do nothing to affect parties' rights relative to challenged conduct, the challenges are "classically moot." *Friends of Animals v. Bernhardt*, 961 F.3d 1197, 1203 (D.C. Cir. 2020). However, certain exceptions apply. "It is well settled that 'a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.'" *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (quoting *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982)). And another "'exception' to the general mootness doctrine" applies "where a challenged action is 'capable of repetition, yet evading review.'" *Sw. Bell Tel. Co. v. F.C.C.*, 168 F.3d 1344, 1351 (D.C. Cir. 1999) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 109 (1998)). "Both exceptions involve instances where,

despite the apparent demise of the controversy, its resolution has a reasonable chance of affecting the parties' future relations." *Clarke v. United States*, 915 F.2d 699, 703 (D.C. Cir. 1990).

## IV. ANALYSIS

The Government argues that Plaintiffs' claims are now moot because "the Court can no longer provide meaningful relief." Defs.' Mem. MTD 5–7. In support of that claim, the Government notes the Complaint's prayer for relief, which asks the Court to enjoin the Government to withdraw the EFPs, declare the Government's issuance of the EFPs a violation of the APA, and vacate or set them aside. Compl. 39, ECF No. 1. Plaintiffs respond that the case is not moot either because the Government's rescission of the EFPs implicates the voluntary cessation exception to mootness, or the Government's challenged actions are capable of repetition yet evading review. Pls.' Opp'n 7-16. Because the Court finds the capable-of-repetition-yet-evading-review exception applies, the Court does not reach the narrower voluntary cessation exception. And because the Government has already granted new EFPs to most of the state applicants, the Court denies the Government's request for abeyance.

### A. Capable of Repetition Yet Evading Review

Even if the Court can no longer provide "effectual relief," the case will not be moot if Plaintiffs show that the alleged legal injury is capable of repetition yet evading review. *In re Sealed Case*, 144 F.4th 329, 332–33 (D.C. Cir. 2025). "This exception to the mootness doctrine applies 'where (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again.'" *Vanda Pharms., Inc. v. United States Food & Drug Admin.*, 123 F.4th 513, 523 (D.C. Cir. 2024), *cert. denied sub nom. Vanda Pharms., Inc. v. Food*

*& Drug Admin.*, 146 S. Ct. 605 (2025) (quoting *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 170 (2016)). "When these two circumstances are simultaneously present, the plaintiff has demonstrated an exceptional circumstance in which the exception will apply." *Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316, 322 (D.C. Cir. 2009) (simplified). The party invoking the capable-of-repetition-yet-evading-review exception bears the burden on both prongs. *Sec'y of Lab., Mine Safety & Health Admin. v. M-Class Mining, LLC*, 1 F.4th 16, 24 (D.C. Cir. 2021). The Court finds that Plaintiffs have shown that both the duration prong and the reasonable expectation of repetition prong are met.

**1. Evading Review**

The first requirement, that the duration of the challenged action is "too short to be fully litigated prior to cessation or expiration," is met. *Vanda Pharms., Inc.*, 123 F.4th at 523. The exception's contemplated "review" is Supreme Court review. *Del Monte Fresh Produce Co.*, 570 F.3d at 322 (quoting *Christian Knights of Ku Klux Klan Invisible Empire, Inc. ("KKK") v. District of Columbia*, 972 F.2d 365, 369 (D.C. Cir. 1992)). With Supreme Court review in mind, the D.C. Circuit has found that "agency actions of less than two years' duration cannot be 'fully litigated' prior to cessation or expiration." *Id.* (citations omitted); *Vanda Pharms., Inc.*, 123 F.4th at 523. The challenged agency action here is the issuance of EFPs in early May which were valid through the end of the year, or put differently, of approximately 8 months' duration. FWC EFP 1–2, ECF No. 7-1; GADNR EFP 1–2, ECF No. 7-2; SCDNR EFP 1–2, ECF No. 7-3; NCDNR EFP 1–2, ECF No. 7-4. In fact, a short duration of one year or less is the default for EFPs. *See* 50 C.F.R. § 600.745(b)(5) ("Duration. Unless otherwise specified in the EFP or a superseding notice or regulation, an EFP is valid for no longer than 1 year."). The 8-month EFPs fall squarely within the recognized two-year standard for agency action that evades review.

The Court does not find the Government's counterarguments persuasive. First, the Government argues the exception does not apply because the challenged EFPs "did not expire under their own terms," but rather, were enjoined and then rescinded. Defs.' Mem. MTD 11. However, the capable-of-repetition-yet-evading-review exception applies to "agency actions of less than two years duration" regardless of whether they expire or are ceased. *Del Monte Fresh Produce Co*., 570 F.3d at 322 ("[A]gency actions of less than two years' duration cannot be 'fully litigated' prior to *cessation or expiration*.") (emphasis added) (citations omitted).

Next, the Government argues that expedited review available under the MSA saves the EFPs from evading review. This misses the mark for at least two reasons. To begin with, the expedited review the Government references is judicial review under 16 U.S.C. § 1855(f). Defs.' Reply 12–13 (citing 16 U.S.C. § 1855(f)(3)(A)-(B) and (4)). As the Court has previously found, this judicial review applies to "'regulations promulgated by the Secretary,' as well as other 'actions that are taken by the Secretary under regulations which implement a fishery management plan.'" PI Mem. Op. 9 (simplified). But the challenged EFPs were granted under authority "draw[n] from Section 1867(d) of the MSA," such that the EFPs fall out of the scope of 1855(f) judicial review. *Id*. at 10–11. And even if expedited review had applied, the agency action in question still falls under the two-years-duration standard for Supreme Court review. *Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 321 (D.C. Cir. 2014) ("In addressing whether a matter can be fully litigated, we do not consider the availability of expedited review."); *see Del Monte Fresh Produce Co*., 570 F.3d at 322.

Finally, the Government's note that "Plaintiffs may participate in the public comment process" and challenge any new EFPs issued does nothing to address the evasion of Supreme

Court review applicable to the 8-month EFPs challenged here. Defs.' Mem. MTD 13. The Court therefore finds the challenged EFPs are of sufficiently short duration to evade review.

**2. Capable of Repetition**

Plaintiffs have also met their burden to demonstrate "there is a reasonable expectation that the same complaining party will be subject to the same action again." *Vanda Pharms., Inc.*, 123 F.4th at 523. The Court first defines the wrong or injury that is capable of repetition before examining the evidence and the parties' arguments that it is reasonably likely to be repeated.

As an initial matter, the Court must address "defining the wrong that the defendant is alleged to have inflicted" or "the injury that is capable of repetition." *Clarke v. United States*, 915 F.2d at 703. This inquiry focuses on "the legal wrong complained of," *Del Monte Fresh Produce Co.*, 570 F.3d at 324, and "is defined by the plaintiffs' theory set forth in the complaint," *id.* (citing *Clarke*, 915 F.2d at 703-04). Plaintiffs contend that the "legal wrong" is the Government "using an [EFP] to circumvent, or violate, the substantive requirements of the [MSA]." Pls.' Opp'n 5. The Government responds that the legal harm must be cabined only to the "*specific* EFPs NMFS issued in early May 2026," pointing out that the Complaint requests the Court preliminarily enjoin the May EFPs, declare that they violated the APA, and vacate them. Defs.' Reply 3–4 (citing Compl. 39) (emphasis in the original). Finding the Government's construction too narrow and Plaintiffs' construction too broad, the Court must define the legal wrong by reference to the theory set forth in the Complaint.

The Court finds the Government's construction that the wrong is the specific issuance of the May EFPs too narrow. The D.C. Circuit has rejected the Government's approach. In *Del Monte*, although the complaint focused on the events of a particular delay in the government acting on a license application, the court rejected "the district court's approach" which

"focuse[d] on whether the precise historical facts that spawned the plaintiff's claims [were] likely to recur" and held that the proper inquiry was whether "the legal wrong complained of by the plaintiff is reasonably likely to recur." *Del Monte Fresh Produce Co.,* 570 F.3d at 323–24. Because *Del Monte* had shown that there was a reasonable likelihood that it would "suffer the same type of legal wrong—unlawfully withheld approval or unlawful delay," it was a "classic example of a legal injury that is capable of repetition yet evading review." *Id.* at 324–25. A similar result obtained in *KKK* where, although the complaint concerned only a particular parade permit, the legal wrong at issue (alleged violation of the First Amendment in the government's refusal to grant a parade permit because of potential violence) was found capable of repetition. 972 F.2d at 369–71. In light of these precedents, the Court finds the Government's construction too narrow.

Here the Complaint supports Plaintiffs' view that the legal wrong alleged is issuing an EFP that circumvents or violates the substantive requirements of the MSA. Pls.' Opp'n 5. "[T]he wrong at issue for mootness purposes is defined by the plaintiffs' theory set forth in the complaint." *Del Monte Fresh Produce Co*., 570 F.3d at 323 (citing *Clarke,* 915 F.2d at 703–04). The Complaint alleges that the Government issued EFPs "that violate statutory requirements," Compl. 36, that the "challenged agency action" was "[p]lanning to sidestep the [MSA]," *id.* at 30, and that the EFPs were invalid because "the [MSA] does not allow Defendants to do anything through the challenged [EFPs] that they would not be able to do otherwise in ordinary fishery management under the Act," *id.* ¶ 144. The Court agrees that the injury under scrutiny for mootness is not merely the specific alleged violation in the May EFPs, but harm under Plaintiffs' legal theory that the Government granted EFPs that violate the MSA.

However, Plaintiffs' formulation does not quite capture the injury to these Plaintiffs. The crux of the mootness exception is that "the issue will be the basis of a continuing controversy between the two parties." *J. T. v. D.C.*, 983 F.3d 516, 524 (D.C. Cir. 2020) (simplified); *see Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 323–24 (D.C. Cir. 2014) ("Action is 'capable of repetition' if there is 'a reasonable expectation that the same complaining party [will] be subjected to the same action again.'") (quoting *KKK,* 972 F.2d at 370). Thus, Plaintiffs' broad definition of the injury would sweep in the Government's issuance of EFPs that may violate the MSA but may not affect any of these commercial red snapper fishers. The Court again looks to the Complaint to refine the definition. The Complaint alleges the violation or attempted circumvention of the MSA harms Plaintiffs (1) economically by negatively impacting commercial fishing of red snapper, (2) threatening their way of life as it depends on "robust fish populations," and (3) "damag[ing] the community fabric of the commercial fishery." Compl. ¶¶ 31–33. Given those allegations, the Court thinks a more precise formulation of the legal wrong advanced by Plaintiffs is issuing EFPs that circumvent or violate the MSA to the detriment of commercial red snapper fishing.

Having established the legal wrong at issue, the Court turns to its likelihood of repetition. Under the capable-of-repetition-yet-evading-review exception, repetition must be more than a "theoretical possibility;" a plaintiff must show either a "'reasonable expectation' or 'demonstrated probability' that the action will recur." *Senate Permanent Subcomm. on Investigations v. Ferrer*, 856 F.3d 1080, 1088 (D.C. Cir. 2017) (quoting *Beethoven.com LLC v. Librarian of Congress*, 394 F.3d 939, 951 (D.C. Cir. 2005)). However, "[t]he Supreme Court has instructed that the capable-of-repetition prong is not to be applied with excessive 'stringency.'" *Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 324 (D.C. Cir. 2014)

(quoting *Honig v. Doe*, 484 U.S. 305, 320 n.6 (1988)). "In other words, a controversy need only be '*capable* of repetition,' not 'more probable than not.'" *Id.* (quoting *Honig v. Doe*, 484 U.S. 305, 320 n.6 (1988) (emphasis in original)); *Doe v. Sullivan,* 938 F.2d 1370, 1378–79 (D.C.Cir.1991) ("It is enough ... that the litigant faces some likelihood of becoming involved in the same controversy in the future.") (simplified). Plaintiffs argue there is a reasonable expectation the action will recur because (1) the legal wrong has already affected at least one Plaintiff twice, (2) there are multiple opportunities for repetition, (3) the Government has not changed its position, and (4) the procedural barriers to repetition are minimal. The Court takes these arguments in turn before addressing the Government's counterarguments.

Plaintiffs argue that the Government has inflicted the same legal wrong on at least one Plaintiff twice already. Pls.' Resp. FWC Notice 5–6. "In estimating the likelihood of an event's occurring in the future, a natural starting point is how often it has occurred in the past." *In re Sealed Case*, 77 F.4th 815, 827 (D.C. Cir. 2023) (quoting *Clarke*, 915 F.2d at 704). Plaintiffs allege that the Government issued EFPs that violated the MSA at least once in May, 2026. Compl. Beyond that, as the FWC noted, the FWC submitted an application for a new EFP on July 10, 2026, and the NMFS issued new permits to FWC, GADNR, and SCDNR on September 21, 2026. FWC Notice 1. Those September EFPs have been challenged by a group of plaintiffs including one of the Plaintiffs in this case. Pls.' Resp. FWC Notice 5. Plaintiffs indicate that this suit concerning the May EFPs and that suit concerning the September EFPs both allege violations of the MSA's recreational/commercial allocation requirements.[1] *Id.* at 6 (first citing

[1] The Court may take judicial notice of those proceedings including the public records in them. *Donelson v. U.S. Bureau of Prisons*, 82 F. Supp. 3d 367, 371 (D.D.C. 2015), *aff'd sub nom. Donelson v. Fed. Bureau of Prisons*, No. 15-5136, 2015 WL 9309944 (D.C. Cir. Dec. 7, 2015). The Court takes notice only of the facts of the Complaint's filing, the parties involved,

Complaint, *Ariel Seafoods of Florida, Inc. v. Lutnick*, No. 26-cv-3468 (D.D.C. filed Oct. 5, 2026) ¶¶ 223–225, ECF No. 1; then citing Compl. ¶¶ 134–142). For its part, FWC alleges that the "newly issued EFP . . . differs materially from the rescinded EFP." FWC Notice 2. Most saliently, FWC claims that its new EFP "establishes a specific recreational harvest limit," supports a season of shorter duration, and "requires immediate closure of the season upon reaching the harvest limit." *Id.* If true—which the Court does not decide here—it would be to the Government's and FWC's credit to have addressed some of the most glaring deficiencies in the May EFPs. *See* PI Mem. Op. 18–20. The Government also protests that, at the time of briefing, no new EFPs had been issued and they were not ripe for adjudication. Defs.' Reply 7. However, that is not the issue. The capable-of-repetition-yet-evading-review exception is no occasion to pre-litigate future wrongs or even to litigate concurrent alleged wrongs. The Court need not pre-determine whether the September EFPs indeed violate the MSA to the detriment of commercial red snapper fishing. Rather the Court looks at the available evidence only in so far as it is relevant to whether the same legal wrong is likely to recur. The fact that one of the Plaintiffs here has now challenged the Government's issuance of EFPs for red snapper under the same legal theory twice is a modest indication that the legal wrong Plaintiffs complain of is capable of repetition—and not more. Furthermore, Plaintiffs do not rely on the challenge to the September EFPs alone.

Plaintiffs argue that in addition to the September EFPs there will be multiple future opportunities for the Government to issue EFPs that may violate the MSA to their detriment. Pls.' Opp'n 11–12, 16. Courts have found likelihood of repetition where opportunities are

---

and the Complaint's allegations—without crediting those allegations—in *Ariel Seafoods of Florida, Inc. v. Lutnick*, No. 26-cv-3468 (D.D.C. filed Oct. 5, 2026).

common. *See KKK,* 972 F.2d at 371 (finding likelihood of repetition where "the Klan is resolved to continue marching" and "D.C. is a perennial favorite for demonstrations" and collecting cases where repetition was found because "labor disputes followed by strikes are common place" and "an economic turnabout could cause the issue to arise again, as it had three times in three decades"); *In re Sealed Case*, 144 F.4th 329, 333 (D.C. Cir. 2025) (finding exception applied where reliance on certain nondisclosure orders was commonplace). Plaintiffs point to "future EFP applications in 2027 and 2028" as potential instances of repetition affecting commercial red snapper fishing. Pls.' Opp'n 11; Snapper-Grouper Fishery of the South Atlantic; Requests for Exempted Fishing Permits, 91 Fed. Reg. 6827, 6830 (Feb. 3, 2026) (noting potential to "extend the pilot program for an additional 2 years (covering 2027 and 2028)"). They note EFPs are under consideration for other species as well, though this is weak evidence, if any, of the likelihood of recuring harm to these commercial red snapper fishers. Pls.' Opp'n 11–12 (citing August 2026 Louisiana EFP application for Gulf amberjack). Plaintiffs also note that the "current Administration is promoting exempted fishing permits as a way of managing difficult fisheries," and is "taking credit" for red snapper EFPs. *Id.* at 12 (citing Exec. Order No. 14,276, Sec. 4(c), 90 Fed. Reg. 16,993, 16,994 (Apr. 22, 2025) ("As soon as practicable, the Secretary of Commerce shall expand exempted fishing permit programs to promote fishing opportunities nationwide.")); *id.* at 8–9 (citing social media post saying "To all those who fish 'Red Snapper' – TRUMP and NOAA are delivering for you. ENJOY!!"). Furthermore, NCDNR has expressed interest in "a future EFP application" though it has not yet submitted one. Defs.' MTD Ex. C. Given that the Government does not claim it is not likely to issue additional red snapper EFPs, this evidence, alongside the issuance of red snapper EFPs in September, indicates that the

Government is likely to continue considering and issuing new EFPs for red snapper over the coming years.

The fact that the Government has not changed the position it advocated at the preliminary injunction stage also increases the likelihood of repetition. A party's vigorous defense of the challenged conduct may indicate that conduct is likely to recur. *Knox v. Serv. Emps. Int'l Union*, 567 U.S. 298, 307 (2012) ("[S]ince the union continues to defend the legality of the [challenged] fee, it is not clear why the union would necessarily refrain from collecting similar fees in the future.")[2]; *West Virginia v. Environmental Protection Agency*, 597 U.S. 697, 720 (2022) (finding government's vigorous defense of the legality of its approach indicated likelihood of recurrence); *Am. Clinical Lab. Ass'n v. Becerra*, 40 F.4th 616, 622–23 (D.C. Cir. 2022) (noting agency's defense of a position and leaving open the possibility of changing its rule back indicative of likelihood of recurrence). Pointing to the Government's briefing on preliminary injunction, Plaintiffs argue repetition is likely because the Government has not changed its position that the MSA's substantive requirements do not apply to EFPs. Pls.' Opp'n 12; *see* Defs.' Opp'n Pls.'

[2] Although the defendant bears the burden to prove "no reasonable expectation remains that it will return to its old ways" under the voluntary cessation mootness exception, *Fed. Bureau of Investigation v. Fikre*, 601 U.S. 234, 241, (2024) (simplified), the repetition analysis is otherwise "very similar" between the capable-of-repetition-yet-evading-review and voluntary-cessation exemptions, *Lighthouse Fellowship Church v. Northam*, 20 F.4th 157, 165 (4th Cir. 2021). Consequently, voluntary cessation cases can inform courts' analysis of likelihood of repetition under the capable-of-repetition-yet-evading-review exception and vice versa. *See Alaska v. United States Dep't of Agric.*, 17 F.4th 1224, 1228 (D.C. Cir. 2021) (analogizing "capable of repetition" inquiry in *National Wildlife Federation v. Hodel*, 839 F.2d 694, 742 (D.C. Cir. 1988) to voluntary cessation claim); *Nat'l Black Police Ass'n v. D.C.*, 108 F.3d 346, 351 (D.C. Cir. 1997) (citing *Native Vill. of Noatak v. Blatchford*, 38 F.3d 1505, 1511 (9th Cir. 1994), *overruled on other grounds by Bd. of Trs. of Glazing Health & Welfare Tr. v. Chambers*, 941 F.3d 1195 (9th Cir. 2019) for the proposition that "reasonable probability inquiry under voluntary cessation analysis and the capable of repetition exception is the same"). For those reasons, the Court addresses the parties' arguments under the voluntary cessation exception where they appear also to apply to the capable-of-repetition-yet-evading-review exception.

Mot. Prelim. Inj. 15–16, ECF No. 22 (arguing substantive provisions of MSA apply only to fishery management plans, not EFPs). Though the Government has made some reassuring noises, the Court agrees the Government has not changed its position. The Government has stated only that issuance of future EFPs would be "informed by the Court's preliminary injunction decision in this case." Defs.' Mem. MTD 11. The Court thinks this careful wording is too vague to be considered the Government's concession that the substantive provisions of the MSA apply to EFPs. The Government also submitted a declaration from the Secretary's office stating that NMFS would "follow the process" under 50 C.F.R. § 600.745 to evaluate new EFP applications "for completeness and consistency with the applicable regulatory requirements." Petty Decl. ¶ 13. Notably, the declaration does not specify which regulatory requirements the Government believes apply—the regulatory requirements specific to EFPs under 50 C.F.R. § 600.745, or the broader regulatory requirements of the MSA. In fact, the context in which that statement appears indicates the Government's intent to follow the procedural requirements of 50 C.F.R. § 600.745 without passing on the substantive requirements of the MSA. *See id.* ¶¶ 13–14 (indicating intent to publish notice and to receive and address comments); *see also Fed. Bureau of Investigation v. Fikre*, 601 U.S. 234, 242 (2024) (finding, for voluntary cessation purposes, government's assurance it would not relist plaintiff on the No Fly List "based on 'currently available information'" insufficient and noting, "[p]ut simply, the government's sparse declaration falls short of demonstrating that it cannot reasonably be expected to do again in the future what it is alleged to have done in the past"). The Government also invokes a "presumption of regularity afforded NMFS in carrying out its duties pursuant to the MSA." Defs.' Reply 10–11. That presumption rings hollow insofar as the Government continues to disagree with the Court about the nature of its "duties pursuant to the MSA." *See supra* p. 7

(noting the Government's continued disagreement with the Court's preliminary injunction order on whether expedited judicial review applies to EFPs). While the Government's declaration at least indicates the Government will review EFP applications for completeness, the Court agrees with Plaintiffs that the Government does not appear to have changed its position advanced at the preliminary injunction stage that the substantive requirements of the MSA do not apply to EFPs. *See* Defs.' Opp'n Pls.' Mot. Prelim. Inj. 15–16.

Plaintiffs also argue that the relative ease of reversing course increases the likelihood of recurrence. "Courts have noted that structural obstacles to reimposing a challenged law—such as a full repeal and the need to undertake new lawmaking—generally moot a case," *Am. Clinical Lab'y Ass'n v. Becerra*, 40 F.4th 616, 623 (D.C. Cir. 2022) (quoting *Alaska v. U.S. Dep't of Agric.*, 17 F.4th 1224, 1229 n.5 (D.C. Cir. 2021), while "actions that can be reversed at the stroke of a pen or otherwise face minimal hurdles to re-enforcement can thwart mootness." *Alaska v. United States Dep't of Agric.*, 17 F.4th at 1229 n.5. But structural hurdles themselves are not determinative. In *Am. Clinical Lab'y Ass'n v. Becerra*, the D.C. Circuit found "the fact that the Secretary replaced the 2016 Rule with the 2018 Rule did not moot th[e] case" because other evidence indicated the agency would readily change its position. 40 F.4th at 622. This limited guidance is not particularly illuminating since the process for granting EFPs lies somewhere in the middle. Plaintiffs note the Government "can issue [EFPs] unilaterally and outside the ordinary council-based fishery management process." Pls.' Opp'n 13. But the procedural requirements are neither obviously arduous nor minimal: The Government can issue EFPs after publishing notification of an application in the federal register and providing 15-45 days for comment. 50 C.F.R. § 600.745 (b)(3)(i). Thus, the permitting process is not the equivalent of notice and comment rulemaking, nor can it be instantaneously accomplished without notice.

*Compare N.Y. State Rifle & Pistol Ass'n, Inc. v. City of New York*, 590 U.S. 336, 338–39, (2020) ("After we granted certiorari, the State of New York amended its firearm licensing statute, and the City amended the rule . . . which is the precise relief that petitioners requested. . . . Petitioners' claim for declaratory and injunctive relief with respect to the City's old rule is therefore moot."); *with Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 20 (2020) (finding matter was not moot where government regularly reclassified areas under Covid lockdown without notice and "applicants remain[ed] under a constant threat that the area in question w[ould] be reclassified"). This factor is relatively neutral. Moreover, it makes little difference how difficult the EFP process is when the uncontroverted evidence indicates that the Government is likely to issue additional red snapper EFPs.

The combination of the opportunities for repetition and the Government's position that the MSA's requirements do not apply to EFPs indicates a reasonable likelihood of repetition of the legal wrong at issue between these parties. *See KKK,* 972 F.2d at 371 ("We are confident that eventually [the Klan] will make its way into the city again and we are just as confident that the potential of violence will attend its 'street walk.'").

Turning now to the Government's responses, instead of refuting Plaintiffs' evidence of the likelihood of repetition, many of the Government's responses appear to recap the classic objections to the mechanics of the mootness exceptions themselves. Enigmatic as the exceptions may seem, where their requirements are met, courts will apply them. *See, e.g.*, *Libertarian Party v. D.C. Bd. of Elections & Ethics*, 768 F. Supp. 2d 174, 178 (D.D.C. 2011), *aff'd,* 682 F.3d 72 (D.C. Cir. 2012) (finding case capable of repetition yet evading review because "[l]egal challenges to election procedures often take longer to resolve than the election cycle itself"); *see also Kremens v. Bartley*, 431 U.S. 119, 140 (1977) (Brennan, J., dissenting) ("[T]he recent Art.

III jurisprudence of this Court in such areas as mootness and standing is creating an obstacle course of confusing standardless rules to be fathomed by courts and litigants."). The Government's objections do not refute the reasonable likelihood of repetition that Plaintiffs have shown.

First, the Government claims the Court lacks jurisdiction "to hear claims concerning some allegedly unlawful 'pattern and practice' beyond the *specific agency actions* challenged in [Plaintiffs'] Complaint." Defs.' Reply 4 (emphasis in original). However, as the D.C. Circuit has explained:

> [E]ven though the specific action that the plaintiff challenges has ceased, a claim for declaratory relief will not be moot even if the "plaintiff has made no challenge to [an] ongoing underlying policy, but merely attacks an isolated agency action," so long as "the specific claim fits the exception for cases that are capable of repetition, yet evading review, or falls within the voluntary cessation doctrine."

*Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316, 321 (D.C. Cir. 2009) (quoting *City of Houston, Tex. v. Dep't of Housing & Urban Dev.*, 24 F.3d 1421, 1429–30 (D.C. Cir. 1994)). That is what Plaintiffs do here: challenge a specific agency action and then argue their claim falls under the mootness exceptions. In the same vein, the Government appeals to *Lujan* noting that courts can intervene "in the administration of laws only when and to the extent that *a specific 'final agency action'* has an actual or immediately threatened effect." Defs.' Reply 5 (emphasis in original) (citing *Lujan v. National Wildlife Federation*, 497 U.S. 894 (1990)). Again, Plaintiffs have done just what they must here. Unlike the plaintiffs in *Lujan*, Plaintiffs have challenged a specific agency action, the issuance of the May EFPs, and offered evidence of the likelihood of its repetition.[3] Compl. ¶ 132; Pls.' Opp'n 10-15, 16-17; Pls.' Resp. FWC Notice 5–8.

---

[3] A plaintiff may also challenge an ongoing policy so long as the plaintiff demonstrates standing and ripeness. *Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316, 321 (D.C.

Second, the Government argues that any opinion issued regarding the "now-void EFPs" would be impermissibly advisory and that claims against future EFPs are unripe. Defs.' Reply 4, 6–8, 11. But courts have jurisdiction to hear cases that would otherwise be moot when they meet the capable-of-repetition-yet-evading-review requirements, and adjudication of those claims does not adjudicate future claims. *See, e.g.*, *KKK*, 972 F.2d at 369-71. In *KKK*, the D.C. Circuit proceeded to appellate review of a short-term-permit controversy while noting, "The march is over. Nothing a court could do today would change what occurred. The Klan received the full measure of relief it sought through its complaint." *Id.* at 369; *see Storer v. Brown*, 415 U.S. 724, 737 n.8 (1974) ("The 1972 election is long over, and no effective relief can be provided to the candidates or voters, but this case is not moot, since the issues properly presented, and their effects on independent candidacies, will persist."). It did so because it found a "reasonable likelihood" that the Klan would seek another parade permit in the District at some time in the future, and that failing the mootness exception, the short-term permit at issue would evade Supreme Court review. *KKK*, 972 F.2d at 369-71. The Court can, as the D.C. Circuit did in *KKK*, find that a mootness exception applies to a short-term permit now past or void without issuing an advisory opinion or adjudicating unripe claims.

Finally, the Government argues Plaintiffs "may elect to challenge any new EFPs." Defs.' Reply 13. True enough. But for over half a century, the Supreme Court has found that the whack-a-mole approach the Government suggests is insufficient where the short duration of the

---

Cir. 2009) ("[A] plaintiff's challenge will not be moot where it seeks declaratory relief as to an ongoing policy. . . . Of course, plaintiffs challenging an ongoing policy must demonstrate standing to bring such a forward-looking challenge and [that] the request for declaratory relief is ripe.") (simplified).

action precludes full review before mootness. *E.g., Roe v. Wade*, 410 U.S. 113, 125 (1973), *overruled on other grounds by Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 142 (2022); *Storer v. Brown*, 415 U.S. 724, 737 n.8 (1974). If, as the Government advocates, no mootness exception applied, Plaintiffs would be on a mootness "treadmill" where future EFP violations might all likewise evade review, as the Government could continue to issue improper short-term EFPs and then invoke mootness as each of them expired. Pls.' Resp. FWC Notice 7 ("And the moment the new [September EFPs] expire, Plaintiffs fully expect Federal Defendants to again argue mootness.").

Taking all of this into consideration, the Court is persuaded Plaintiffs have shown both a reasonable expectation that the Government will continue issuing EFPs for red snapper, and a reasonable expectation that, since the Government has not changed its position, at least some of those are likely to violate the substantive requirements of the MSA to the detriment of commercial red snapper fishing. The Court finds, therefore, that the case is not moot because the harm alleged is capable of repetition yet evading review. Having found this exception applies, the Court need not consider the applicability of the "narrower" voluntary cessation exception.[4]

[4] The Court does not reach the voluntary cessation exception to mootness for which the Government would bear the burden of showing no reasonable expectation of recurrence remains. *Fikre*, 601 U.S. at 241. However, the Court notes that the Government's position that its recission of the May EFPs was not "voluntary" because the Government "rescinded the EFPs at the states' request," Defs.' Mem. MTD 9, entirely fails to address FWCs involvement in this litigation. FWC, one of the state agency recipients of the four challenged EFPs, moved to intervene in this action on June 2, 2026, ECF No. 30, and was granted intervention as of right on June 18, 2026, ECF No. 35. Consequently, FWC was, by its own initiative, a Defendant-Intervenor in this case on June 19, 2026, when it submitted its letter to NMFS requesting cancelation of one of the challenged EFPs. Defs.' MTD Ex. B 1. At least as regards FWC's EFP, the Government's position (which FWC joined) that "the lack of jurisdiction is due to action by a third party" appears inconsistent with FWC's affirmative participation as Intervenor-Defendant in this suit. Defs.' Mem. MTD 9.

*Alphabet Workers Union-Commc'n Workers of Am., Loc. 9009 v. Nat'l Lab. Rels. Bd.*, 134 F.4th 1217, 1225 (D.C. Cir. 2025).

### B. The Government's Other Requests

Because the Government has already issued the September EFPs, the Court denies as moot the Government's request for an "abeyance until NMFS takes any final agency action on the new EFP applications." Defs' Mem. MTD 11. As for the administrative record, it is within the Court's discretion to adjust the filing due date. LCvR 7(n)(1) (noting deadlines apply "unless otherwise ordered by the Court"). The Court ordered the production of the administrative record as to the Complaint on or before August 10, 2026, Minute Ord. Grant. Defs.' Mot. Ext. Time (July 9, 2026), yet the administrative record was not produced. Defendants shall produce the relevant administrative record on or before December 9, 2026.

## V. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss or in the Alternative for Abeyance (ECF No. 43) is **DENIED.** An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: November 25, 2026

RUDOLPH CONTRERAS
United States District Judge